## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL, et al.,

      Plaintiffs,

v.                           C.A. No. 21-cv-01052-CFC

SEABOARD CORPORATION,

      Defendant.

## DEFENDANT'S OPENING BRIEF IN SUPPORT OF ITS MOTION
## TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Dated:  November 4, 2021

Robert M. Brochin (*pro hac vice*)
Matthew Papkin (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, Florida 33131-3075
(305) 415-3000
bobby.brochin@morganlewis.com
matthew.papkin@morganlewis.com

Carl A. Valenstein (*pro hac vice*)
One Federal Street
Boston, MA 02110
(617) 341-7700
carl.valenstein@morganlewis.com

Brian Herman (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 309-6000

MORGAN, LEWIS & BOCKIUS LLP
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
jody.barillare@morganlewis.com

*Counsel for Defendant Seaboard Corporation*

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................1

II. FACTUAL BACKGROUND.................................................................5

 A. The Cuban Government's Confiscation Of The Rosell Siblings'
  Properties.........................................................................................5

 B. Maritima Mariel's Contingent And Non-Exclusive Concession
  Right To Construct Facilities At The Port Of Mariel .......................5

 C. The Status Of The Alleged Claims To The "Confiscated
  Property" .........................................................................................6

 D. Shipments To The Port Of Mariel....................................................7

 E. Alleged "Trafficking" By Non-Parties...............................................7

III. ARGUMENT.........................................................................................8

 A. The Amended Complaint Fails To State A Claim Because
  Plaintiffs Do Not Adequately Allege Trafficking In Confiscated
  Property .............................................................................................8

  1. Plaintiffs Do Not Plausibly Allege That Seaboard
   Corporation Trafficked In The Property Confiscated By
   The Cuban Government..........................................................8

  2. Plaintiffs Fail To Plausibly Allege That Seaboard
   Corporation "Knowingly And Intentionally" Trafficked ........11

  3. Plaintiffs' Conclusory Allegations Of "Trafficking" By
   Non-Parties Do Not Serve As A Basis For A Claim
   Against Seaboard Corporation.................................................14

  4. Title III's "Lawful Travel" Clause Defeats Plaintiffs'
   Claims ...................................................................................16

 B. The Inheritors And Estates Cannot Bring Title III Claims ...............17

 C. The Amended Complaint Should Be Dismissed Because
  Plaintiffs Lack Article III Standing..................................................19

IV. CONCLUSION...................................................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Angino v. Branch Banking & Tr. Co.*,
    855 F. App'x 96 (3d Cir. 2021) ..........................................................................16

*de Fernandez v. Seaboard Marine, Ltd.*,
    No. 20-CV-25176, 2021 WL 3173213 (S.D. Fla. July 27, 2021) ..............2, 4, 19

*Evankavitch v. Green Tree Servicing, LLC*,
    793 F.3d 355 (3d Cir. 2015) ..............................................................................17

*Glen v. Am. Airlines, Inc.*,
    No. 4:20-CV-482-A, 2020 WL 4464665 (N.D. Tex. Aug. 3, 2020),
    *vacated on other grounds,* 7 F.4th 331 (5th Cir. 2021).........................11, 17, 19

*Glen v. Trip Advisor LLC*,
    2021 WL 1200577 (D. Del. Mar. 30, 2021) ...................................11, 15, 18, 19

*Gonzalez v. Amazon.com, Inc.*,
    No. 19-23988-CIV, 2020 WL 1169125 (S.D. Fla. Mar. 11, 2020)....................11

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
    484 F. Supp. 3d 1215 (S.D. Fla. 2020) ..............................................................10
    454 F. Supp. 3d 1259 (S.D. Fla. 2020) ...............................................................8

*Iglesias v. Pernod Ricard*,
    No. 20-CV-20157-KMW, 2020 U.S. Dist. LEXIS 164117 (S.D.
    Fla. Aug. 17, 2020) ...........................................................................................10

*Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*,
    998 F.2d 1192 (3d Cir. 1993) ..............................................................................3

*Schaffer v. Weast*,
    546 U.S. 49 (2005)..............................................................................................16

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..................................................................................19, 20

*Thole v. U.S. Bank N.A.*,
   140 S. Ct. 1615 (2020) ..................................................................................21

*United States v. McKie*,
   112 F.3d 626 (3d Cir. 1997) ...........................................................................9

*Wright v. Portfolio Recovery Affiliates*,
   No. CIV.A. 09-612-GMS, 2011 WL 1226115 (D. Del. Mar. 30,
   2011) .............................................................................................................14

**Statutes**

22 U.S.C. § 6023(9) ...........................................................................................11

22 U.S.C. § 6023(13) ...................................................................................15, 16

22 U.S.C. § 6023(13)(A)(i) ...............................................................................9

22 U.S.C. § 6023(13)(A)(iii) ...........................................................................14

22 U.S.C. § 6023(13)(B)(iii) .......................................................................3, 16

22 U.S.C. § 6081(5), (6) ..................................................................................11

22 U.S.C. § 6082 ...............................................................................................17

22 U.S.C. § 6082(a)(1)(A ........................................................................8, 9, 11

22 U.S.C. § 6082(a)(4)(B) ......................................................................4, 17, 18

**Other Authorities**

15 C.F.R. § 740.15 ............................................................................................17

15 C.F.R. § 740.18 ............................................................................................17

31 C.F.R. § 515.533 ..........................................................................................17

Fed. R. Civ. P. 12(b)(1) ......................................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................................1

Defendant Seaboard Corporation, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Amended Complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

## I.    <u>INTRODUCTION</u>

Plaintiffs bring claims under Title III of the Helms-Burton Act against Seaboard Corporation because it allegedly "directed" shipping vessels, operated by a separate entity, to the Port of Mariel in Cuba that called at a container terminal. Plaintiff Odette Blanco de Fernandez née Blanco Rosell ("Ms. Fernandez") and her four siblings (together with Ms. Fernandez, the "Rosell Siblings") allegedly owned various corporations in Cuba that were confiscated by the Cuban Government in 1960.    Plaintiffs seek to hold Seaboard Corporation liable for "trafficking" in confiscated property, but there are no allegations that Seaboard Corporation engaged in any activity involving the property that was allegedly confiscated.    Remarkably, in Plaintiffs' 158-paragraph amended complaint, the only "trafficking" allegations against Seaboard Corporation are conclusory, and merely track the statutory language of Title III—that Seaboard Corporation "directed" shipments and "caused, directed, participated in, or profited from," *non-parties'* purported trafficking.    This is unsurprising, as Seaboard Corporation is not even involved in the shipping business.    These same 18 Plaintiffs—Ms. Fernandez and the four estates and 13

descendants of her deceased siblings—have filed four other Title III cases for "trafficking" in the same property, including against Seaboard Corporation's subsidiary, Seaboard Marine, Ltd. ("Seaboard Marine"), involving the very *same shipments* at issue here.[1]

Plaintiffs' claims should be dismissed for multiple reasons.  *First*, Plaintiffs do not allege, as they must, that Seaboard Corporation trafficked in property that was confiscated by the Cuban Government and to which Plaintiffs own a claim.  The container terminal to which Seaboard Corporation is alleged to have "directed" vessels is not confiscated property as pled in the Amended Complaint, nor could it be.  The container terminal was *not* confiscated by the Cuban Government in 1960, but rather it was built by the Cuban Government decades later.  And the Rosell Siblings never owned the container terminal.  The allegation that Seaboard Corporation "directed" vessels to the container terminal is entirely conclusory and does not show that Seaboard Corporation "trafficked" in any confiscated property.

*Second*, Plaintiffs fail to allege, as they must, *facts* showing that Seaboard Corporation *knowingly and intentionally* trafficked in confiscated property. Plaintiffs rely on a few publications in Cuba, a demand letter sent by counsel shortly

---

[1]     *See* D.I. 14 ("Am. Compl.") at ¶¶ 100 n.16 (citing cases), 139.  In the case against Seaboard Marine, 17 of the 18 Plaintiffs' causes of action were dismissed with prejudice.  *de Fernandez v. Seaboard Marine, Ltd.*, No. 20-CV-25176, 2021 WL 3173213, at *8 (S.D. Fla. July 27, 2021), *reconsideration denied*, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021).

before filing suit, and Plaintiffs' filing of other lawsuits to establish Seaboard Corporation's alleged scienter.   But Plaintiffs do not allege that any of these documents identify any particular property that was confiscated by the Cuban Government which Seaboard Corporation used or benefited from.   Tellingly, Plaintiffs did not attach to the Amended Complaint (or the initial Complaint) the Cuban Government's records of the confiscation at issue.   Those records, which Seaboard Corporation provides to the Court, do *not* show confiscation of any property that Seaboard Corporation allegedly trafficked in.[2]   And the Amended Complaint is devoid of any factual allegations regarding Seaboard Corporation's intent to engage in any activity involving confiscated property.

*Third*, liability does not attach under Title III for transactions that are incident to lawful travel to Cuba.   22 U.S.C. § 6023(13)(B)(iii).   Plaintiffs fail to allege any facts showing that Seaboard Corporation engaged in any activity that was not incident to lawful travel to Cuba, as the shipments alleged were of poultry products authorized under the Cuban Assets Control Regulations and by the Export Administration Regulations.

---

[2]     Certified translations of Decree 2367 (the "Concession Decree") and Resolution No. 436 (the "Confiscation Order") are attached as Exhibits A and B, respectively.   The Court can consider these records because "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."   *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

*Fourth*, Plaintiffs (other than Ms. Fernandez) fail to sufficiently plead that they "acquire[d] ownership" of a claim to the confiscated property "before March 12, 1996," which is necessary to maintain a claim under Title III.  22 U.S.C. § 6082(a)(4)(B).  The 13 descendants of the deceased Rosell Siblings ("Inheritors") allegedly acquired their claims to the confiscated property after the deaths of the deceased Rosell Siblings, which occurred years after 1996.  The four estates ("Estates") also cannot bring Title III claims because they did not acquire ownership of claims to the confiscated property before the statutory cutoff and because Title III claims do not survive death.  For these reasons, the Title III claims brought by these Inheritors and Estates against Seaboard Marine were recently dismissed in *de Fernandez*, 2021 WL 3173213, at *8, and the same result is warranted here.

*Fifth*, Plaintiffs do not have standing to bring this action.  Article III standing is not established by the mere fact that Helms-Burton gives plaintiffs a right to sue persons who traffic in confiscated property.  Plaintiffs must show that they have been injured in some concrete way by Seaboard Corporation's conduct, rather than by the Cuban Government.  Here, Plaintiffs would be in the same position regardless of Seaboard Corporation's alleged activity.  Plaintiffs have not suffered any injury-in-fact fairly traceable to Seaboard Corporation.[3]

---

[3]    Unable to establish a claim based on the facts, Plaintiffs amended the Complaint to add immaterial and scandalous allegations pertaining to entirely

## II.   FACTUAL BACKGROUND

### A.   The Cuban Government's Confiscation Of The Rosell Siblings' Properties

Plaintiffs allege that the Rosell Siblings owned various properties in Cuba. Am. Compl. ¶¶ 83–91.  They owned Maritima Mariel, Compañia Azucarera Mariel, and "several other companies" (*id.* ¶ 89), approximately 11,000 acres of land (*id.* ¶ 90), and unidentified "roads, railways, buildings, and utilities" (*id*).  In 1960, the Castro regime confiscated the Rosell Siblings' property.  *Id.* ¶¶ 92, 93, 95.  The Amended Complaint defines " all of [the Rosell Siblings'] property and rights, whatever their nature" as the "Confiscated Property."  *Id.* ¶ 95 (internal quotation omitted).

### B.   Maritima Mariel's Contingent And Non-Exclusive Concession Right To Construct Facilities At The Port Of Mariel

The Cuban Government granted to Maritima Mariel a 70-year concession in 1955.  *Id.* ¶ 84.  According to the Concession Decree, to expand business at the Port of Mariel, the Cuban Government found that it would be "convenient that the State grant to [an] entity all the facilities to build . . . docks and warehouses" at the Port of Mariel."  Ex. A, at 2.  Maritima Mariel received a concession "to plan, study,

---

unrelated purported business activity in Africa.  (Am. Compl. ¶¶ 10–14.)  The suggestion that Seaboard Corporation supports terrorism is repugnant, and Plaintiffs' mudslinging does not relieve them of their burden to plead all of the elements of a claim under Title III as required under *Iqbal* and *Twombley*.

execute, maintain, and exploit public docks and warehouses in the bay of Mariel . . . and for the construction of new buildings and works, without detriment to the vested rights of third parties by virtue of previous and current concessions . . . ." *Id.* at 3.

Pursuant to the Concession Decree, Maritima Mariel's concession rights were "totally forfeited" unless "within the term of 18 months counted from the publication of this Decree" it began, among other things, constructing "new docks, containment walls, public warehouses, tanks, silos, [and] ferry mooring piers" and "draining, dredging, and filling-in" "part of [the] Bay of Mariel." *Id.* at 3–5. Maritima Mariel also forfeited the concession "if, within the term of one year counted from the publication of the Decree," "the financing" for the "operation of said concession" is not "formalized through the execution of a pertinent deed." *Id.* at 6. Plaintiffs do not allege that Maritima Mariel satisfied these conditions before the confiscation in 1960.

### C.   The Status Of The Alleged Claims To The "Confiscated Property"

The Rosell Siblings became U.S. citizens before March 12, 1996. Am. Compl. ¶ 104. Ms. Fernandez's siblings each died after March 12, 1996. *Id.* ¶¶ 19–22. The Inheritors and Estates did not acquire claims to the Confiscated Property before March 12, 1996, which is required to state a Title III claim.

### D.  **Shipments To The Port Of Mariel**

According to the Amended Complaint, from May 2019 until October 2021, Seaboard Corporation "directed" shipping vessels to a container terminal at the Port of Mariel.  *Id.* ¶¶ 122, 127.  Plaintiffs do not allege that the container terminal was confiscated by the Cuban Government—in fact, the container terminal was built decades after the alleged confiscation.  *Id.* ¶ 110.  Seaboard Corporation is allegedly the "beneficial owner" of the SEABOARD ATLANTIC and the SEABOARD PATRIOT, vessels that each called at the Port of Mariel once.  *Id.* ¶ 121, 127.  Plaintiffs do not allege that Seaboard Corporation trafficked in any of the various roads, railways, buildings, and utilities, the 11,000 acres of land, the 70-year concession, or any other "Confiscated Property."

### E.  **Alleged "Trafficking" By Non-Parties**

Non-party Seaboard Marine allegedly operated the vessels, AS PETULIA, AS PATRIA, NORDBALTIC, SEABOARD ATLANTIC, and SEABOARD PATRIOT (the "Vessels"), to the Port of Mariel from May 2019 until October 2021.  *Id.* ¶ 127.  Non-party Seaboard Atlantic is the owner of the vessel, the SEABOARD ATLANTIC and non-party Seaboard Patriot Limited is the owner of the vessel, the SEABOARD PATRIOT.  *Id.* ¶¶ 121.  Plaintiffs do not allege any activity by these non-parties involving the Confiscated Property.

The Cuban Government allegedly created the "Zona Especial de Desarollo Mariel ('ZEDM')" a "special economic zone" at Mariel Bay. *Id.* ¶ 107. Starting in 2009, the Cuban Government rebuilt the Port of Mariel and constructed the container terminal in the ZEDM, which is operated by Almacenes Universales S.A. ("AUSA"). *Id.* ¶¶ 46, 110. Plaintiffs allege in conclusory fashion that Seaboard Corporation "benefits or profits" from the alleged non-party activity. *Id.* ¶ 144.

## III.   ARGUMENT

### A.   The Amended Complaint Fails To State A Claim Because Plaintiffs Do Not Adequately Allege Trafficking In Confiscated Property

#### 1.   Plaintiffs Do Not Plausibly Allege That Seaboard Corporation Trafficked In The Property Confiscated By The Cuban Government

The core of a Title III claim is that the defendant "traffics" in property that the Cuban Government confiscated *and* to which the plaintiff owns a claim. There is no liability for "trafficking" in any other property. *See* 22 U.S.C. § 6082(a)(1)(A) (Title III imposes liability on a party that "traffic[s] in property which was confiscated by the Cuban Government on or after January 1, 1959" and an action may be brought only by a United States national "who owns the claim to *such* property.") (emphasis added).[4] Stated otherwise, the Amended Complaint must allege facts that the

---

[4]   The phrase "such property" in "the claim to such property" refers to "property which was confiscated by the Cuban Government." *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*, 454 F. Supp. 3d 1259, 1277 (S.D. Fla. 2020).

property Defendant allegedly trafficked in is the same property confiscated by the Cuban Government and to which Plaintiffs own the claims.

The Amended Complaint does not contain allegations that Seaboard Corporation trafficked in property confiscated by the Cuban Government and to which Plaintiffs own claims.  There are no allegations that Seaboard Corporation "acquire[d] or holds an interest in" the businesses, concession rights, land, or unidentified roads, railways, buildings, and utilities (Am. Compl. ¶ 95) that is the Confiscated Property.  22 U.S.C. § 6023(13)(A)(i).  Nor are there allegations that Seaboard "engage[d] in a commercial activity using or otherwise benefiting from" these properties.  *Id.* § 6023(13)(A)(ii).  Accordingly, the Amended Complaint does not allege any facts to show that Seaboard Corporation "trafficked" in the Confiscated Property.[5]

Unable to allege trafficking in the Confiscated Property, Plaintiffs attempt to allege that Seaboard Corporation trafficked in a container terminal *constructed decades after* the confiscation in 1960.  Am. Compl. ¶ 110.  But the container terminal was not confiscated by the Cuban Government.  And the Rosell Siblings

---

[5]  Even if Plaintiffs alleged that Seaboard Corporation trafficked in one of those properties (they did not), it would lead to absurd results if a plaintiff's allegation that a defendant trafficked in one property also made the defendant liable for trafficking in all confiscated properties to which a plaintiff owns a claim. *See United States v. McKie*, 112 F.3d 626, 631 (3d Cir. 1997) (courts have an "obligation to construe statutes sensibly and avoid constructions which yield absurd or unjust results.").

never owned the container terminal, so Plaintiffs do not allege to own claims to it. 22 U.S.C. § 6082(a)(1)(A).   Thus, activity involving the container terminal cannot be the basis for Plaintiffs' Title III claims.

Nor does the conclusory allegation that Seaboard Corporation "directed" shipments to the container terminal (Am. Compl. ¶ 122) state facts showing trafficking in Plaintiffs' purported concession rights.   Plaintiffs do not allege facts showing that Seaboard Corporation violated any concession right.   Maritima Mariel, an entity that was allegedly owned by the Rosell Siblings, was granted concession rights to build facilities at the Port of Mariel; specifically, to "plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel Bay."   *Id.* ¶ 84.   There are no factual allegations that Seaboard Corporation did any of those things.   The concession did not grant the right, much less the exclusive right, to load or unload containers at the container terminal, much less to direct shipments to the container terminal.

Moreover, under Title III, to "traffic" is to use or benefit from confiscated property by, for example, using confiscated land or intellectual property.   *See, e.g.*, *Iglesias v. Pernod Ricard*, No. 20-CV-20157-KMW, 2020 U.S. Dist. LEXIS 164117, *28–29 (S.D. Fla. Aug. 17, 2020) (in selling liquor, defendant was allegedly "using the assets and intellectual property" confiscated by the Cuban Government to which plaintiff held a claim); *Havana Docks Corp. v. Norwegian Cruise Line*

*Holdings, Ltd.*, 484 F. Supp. 3d 1215, 1224 (S.D. Fla. 2020) (alleging cruise line "regularly embark[ed] and disembark[ed] its passengers on the Subject Property"). Plaintiffs certainly do not allege that Seaboard Corporation used or benefitted from a concession right itself. Accordingly, Plaintiffs have failed to plead factual allegations to support the basic elements of a Title III claim.

### 2. Plaintiffs Fail To Plausibly Allege That Seaboard Corporation "Knowingly And Intentionally" Trafficked

Title III was intended to deter investors from doing business with the Cuban Government. *See* 22 U.S.C. § 6081(5), (6). To that end, Title III's definition of "traffics" requires that the person acted "knowingly and intentionally." 22 U.S.C. § 6082(a)(1)(A); *id.* § 6023(13)(A).[6] As a result, "[t]o commit trafficking under the Act, a person must know that the property was confiscated by the Cuban government and intend that such property be the subject of their commercial behavior." *Glen v. Am. Airlines, Inc.*, No. 4:20-CV-482-A, 2020 WL 4464665, at *6 (N.D. Tex. Aug. 3, 2020), *vacated on other grounds,* 7 F.4th 331 (5th Cir. 2021); *see also Glen v. Trip Advisor LLC*, 2021 WL 1200577, at *10 (D. Del. Mar. 30, 2021) (applying rule); *Gonzalez v. Amazon.com, Inc.*, No. 19-23988-CIV, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (same).

---

[6] The Act defines "knowingly" as "with knowledge or having reason to know." 22 U.S.C. § 6023(9).

The Amended Complaint does not contain factual allegations supporting the inferences that Seaboard Corporation knew or had reason to know that (1) the Rosell Siblings' property had been confiscated or (2) that any Confiscated Property was the subject of its commercial behavior.  Nor are there any alleged facts showing that Seaboard Corporation intended to use any Confiscated Property.  Plaintiffs' conclusory allegations regarding publications in Cuba, a letter Plaintiffs allegedly sent to Seaboard Corporation, and other lawsuits filed by Plaintiffs, do not show that Seaboard Corporation knew or should have known that property it used or benefited from had been confiscated.  Am. Compl. ¶¶ 99–101, 149.  Tellingly, neither the publications nor the letter are attached to the Amended Complaint, and Plaintiffs do not allege that any source of information identifies what confiscated property Plaintiffs' allegedly own claims to.

Even if Seaboard Corporation should have known about the confiscation, there are no factual allegations showing that Seaboard Corporation knew that any Confiscated Property was the subject of its commercial behavior.  To understand what property was confiscated, one must look to the Confiscation Order, which *does not identify any property* that Seaboard Corporation allegedly trafficked in.  *See generally*, Ex. B.  Rather, the Confiscation Order provides that, with certain exceptions, the Cuban Government confiscated the property and assets of the Rosell Siblings and their companies.  *Id.* at 4.  The Confiscation Order does not state that

the Cuban Government confiscated any *concession rights* or any container terminal which was not even built at the time.

Moreover, Plaintiffs have not pled any facts to support an inference that Seaboard Corporation had reason to know that the Cuban Government confiscated any concession rights, because Maritima Mariel's concession rights were *contingent* on the company satisfying certain preconditions. The Concession Decree required Maritima Mariel to, among other things, construct a maritime terminal and drain, dredge, and fill-in part of Mariel Bay, and secure financing for its operation of the concession through execution of a deed. Ex. A, at 3–4. Maritima Mariel's failure to begin that work within 18 months, and secure financing within one year, from the date of the concession forfeited any concession rights. *Id.* at 5. Because the confiscation allegedly occurred more than 18 months after the concession rights were granted,[7] Maritima Mariel did not hold any concession rights, and the Cuban Government did not confiscate any, unless Maritima Mariel timely began to satisfy the enumerated preconditions. Yet, the Amended Complaint does not allege that Maritima Mariel began the requisite work or that the required deed was executed, much less that Seaboard Corporation *should have somehow known* that the preconditions were satisfied.

Lastly, Plaintiffs fail to allege the requisite scienter because Maritima Mariel's concession rights were *non-exclusive*. The concession is clear: it was granted

---

[7] The concession was granted in August of 1955 (Am. Compl. ¶ 84) and the confiscation did not occur until September of 1960 (*id.* ¶ 92).

"*without prejudice to the ownership right* of third parties . . . ." Ex. A, at 8 (emphasis added). As such, the terms of the concession do not give any indication that any alleged activity at the Port of Mariel infringed upon a concession right. And there certainly are no factual allegations that Seaboard Corporation *intended* to use or benefit from non-exclusive concession rights.

### 3. Plaintiffs' Conclusory Allegations Of "Trafficking" By Non-Parties Do Not Serve As A Basis For A Claim Against Seaboard Corporation

Plaintiffs also attempt to establish Seaboard Corporation's liability through the acts of non-parties. Am. Compl. ¶ 136. Plaintiffs' non-party trafficking theory fails because the Amended Complaint contains no facts showing that Seaboard Corporation "cause[d], directe[ed], participate[d] in, or profit[ed] from" any supposed trafficking by non-parties. 22 U.S.C. § 6023(13)(A)(iii); *see Wright v. Portfolio Recovery Affiliates*, No. CIV.A. 09-612-GMS, 2011 WL 1226115, at *1 (D. Del. Mar. 30, 2011) ("the complaint must do more than allege [plaintiff's] entitlement to relief; rather, it must 'show' such an entitlement with its facts.").

Plaintiffs allege that non-parties ZEDM, Container Terminal, and AUSA "traffic" by "offloading and/or loading containers from . . . ships at the TCM and parking/storing them at the container storage yard operated by AUSA." Am. Compl. ¶ 49. The Amended Complaint does not allege that these non-parties engaged in *any* activity involving the Confiscated Property, much less any activity that could constitute trafficking under Title III. And there are no factual allegations showing

that Seaboard Corporation is liable for the non-parties' purported trafficking. The Amended Complaint merely copies the statutory definition of "trafficking" into the pleading. *Id.* ¶ 114. There are no factual allegations that Seaboard Corporation participated in or profited from any trafficking activity by these entities.

Plaintiffs also allege that Seaboard Corporation trafficked through non-parties Seaboard Atlantic and the Vessels. Am. Compl. ¶ 136. This theory fails for the same reasons Plaintiffs fail to allege trafficking by Seaboard Corporation itself. *See Infra* § III.A.I. In short, a vessel calling at the container terminal is not trafficking in the Confiscated Property because the container terminal was not confiscated, and Plaintiffs do not own claims to the container terminal.[8]

Moreover, the Amended Complaint does not allege any facts to establish Seaboard Corporation's scienter with respect to any supposed trafficking activity by a third party for the same reasons that Plaintiffs fail to allege Seaboard Corporation itself "knowingly and intentionally" trafficked. *Infra* § III.A.2. There is an additional missing link as to non-parties: Plaintiffs must allege facts to show that *Seaboard Corporation knew* or had reason to know that the non-party trafficked in Confiscated Property and Seaboard Corporation intended to benefit from that activity. 22 U.S.C. § 6023(13)(A)(iii); *Glen*, 2021 WL 1200577, at *10 ("the Court

---

[8]     In addition, only a person—not a vessel—can "traffic" under Title III. 22 U.S.C. § 6023(13).

finds persuasive the analyses of numerous other courts that have interpreted statutes having specific knowledge requirements as requiring knowledge of all the elements listed in the statute"). The Amended Complaint, however, contains no allegations concerning what Seaboard knew or intended with respect to any non-party activity. Plaintiffs fail to state a claim under Title III.

### 4.    Title III's "Lawful Travel" Clause Defeats Plaintiffs' Claims

The definition of "traffics" under Title III "does not include . . . transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel." 22 U.S.C. § 6023(13)(B)(iii). Because "trafficking" is an element of a Title III claim, Plaintiffs must plead facts showing that Seaboard Corporation's conduct falls within the statutory definition of "traffics." *See Angino v. Branch Banking & Tr. Co.*, 855 F. App'x 96, 98 (3d Cir. 2021) (must plead each "necessary element" to state a claim).

Plaintiffs bear the burden to allege and prove that Seaboard Corporation engaged in trafficking activity not incident to lawful travel because the "lawful travel" clause is not an affirmative defense. The touchstone for determining the burden of proof under a statutory cause of action is the statute itself. *Schaffer v. Weast*, 546 U.S. 49, 56 (2005). The Third Circuit held that "[w]hether a particular statutory phrase constitutes a defense or an element of the offense . . . turns on

whether the statutory definition is such that the [offense] may not be properly described without reference to the exception.'" *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 362 (3d Cir. 2015) (internal citation omitted). The "lawful travel" clause is not an exception to the liability provision of the Helms-Burton Act but rather is incorporated in the definition of "traffics." *Compare* 22 U.S.C. § 6023(13) (definitional section), *with* 22 U.S.C. § 6082 (liability section). If Congress intended for the "lawful travel" clause to create a statutory exception to liability, it would have included it in the liability provision of Title III, which separately enumerates the exceptions to liability. 22 U.S.C. § 6082. Accordingly, Plaintiffs' failure to plead that Seaboard Corporation's conduct was not incident to lawful travel is fatal to Plaintiffs' case.[9]

**B.**     <u>**The Inheritors And Estates Cannot Bring Title III Claims**</u>

The plain language of Title III requires that to bring a claim under Title III, the plaintiff must have acquired ownership of a claim to the confiscated property before March 12, 1996. Title III states: "In the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section

---

[9]     Plaintiffs do not and cannot allege such facts because any alleged shipments to the Port of Mariel operated by non-party Seaboard Marine were authorized under the Cuban Assets Control Regulations, 31 C.F.R. § 515.533, and by the Export Administration Regulations, 15 C.F.R. § 740.15 and 15 C.F.R. § 740.18, which implement a U.S. policy of promoting the sale and transportation of agricultural products to Cuba.

on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). Applying this clear threshold requirement, every court that has considered the issue has dismissed Title III claims brought by individuals who did not inherit or otherwise acquire claims to confiscated property before March 12, 1996. *See Glen*, 7 F.4th at 336 (collecting cases); *Glen*, 2021 WL 1200577, at *9 (collecting cases).

Here, the Inheritors acquired any claims to the Confiscated Property *after* March 12, 1996, if at all. For each Inheritor, the Amended Complaint repeats the identical allegation that he or she "inherited" a portion of a claim "to the extent" it "does not remain within [an] estate." Am. Compl. ¶¶ 23–35. If any of these Plaintiffs own a claim to the Confiscated Property, it was acquired after the death of a Rosell Sibling. *Id.* ¶¶ 19–22 (dates of death ranging from February 25, 2001 through November 27, 2014). The Inheritors claims must be dismissed, as the *de Fernandez* court recognized in dismissing these same Inheritors' claims against Seaboard Marine. *See de Fernandez*, 2021 WL 3173213, at *8 (Inheritors "could not have acquired a claim to the Confiscated Property before the statutory cutoff.").

Likewise, the Estates did not "acquire" ownership of claims to the Confiscated Property before March 12, 1996. If the Estates ever acquired ownership of claims to the Confiscated Property they necessarily did so after each Rosell Siblings' death. (Am. Compl. ¶¶ 19–22.) The *de Fernandez* court dismissed the claims brought by

these same Estates for this reason. *de Fernandez*, 2021 WL 3173213, at \*9. To the extent Plaintiffs argue that the Estates (or the personal representatives of the Estates) cannot "acquire" ownership of claims to property due to the nature of an estate, then they cannot bring Title III claims because the statute requires that a plaintiff "acquire[] ownership" of a claim to the confiscated property "before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B); *see also Glen*, 2020 WL 4464665, at \*6 (applying rule and holding that if plaintiffs never "acquired" ownership of a claim to confiscated property then they may not bring an action under Title III).

### C.   The Amended Complaint Should Be Dismissed Because Plaintiffs Lack Article III Standing

Plaintiffs lack Article III standing because they cannot allege that they suffered a "concrete injury" traceable to the alleged shipments on which this action is based. Any injury Plaintiffs sustained occurred when the Cuban Government nationalized the Rosell Sibling's property interests. The Court therefore lacks subject matter jurisdiction.[10]

The "irreducible constitutional minimum of standing consists of three elements . . . . The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540,

---

[10]   An appeal is pending before the Third Circuit challenging a Helms-Burton plaintiff's Article III standing. *See Glen*, 2021 WL 1200577.

1547 (2016) (internal citation and quotations omitted).   At the pleadings stage, plaintiff "must clearly . . . allege facts demonstrating each element." *Id.* (alteration in original) (internal quotations omitted).   To establish an injury in fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"   *Id.* at 1548 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).   A concrete injury "must be 'de facto'; that is, it must actually exist." *Id.* at 1548.

Here, Plaintiffs have not suffered an injury in fact that is fairly traceable to Seaboard Corporation's alleged conduct.   The allegations in the Amended Complaint do not show that Plaintiffs have a legally protected interest in restricting the alleged activity at the container terminal.   Plaintiffs never had an ownership claim to the container terminal in which they allege Seaboard Corporation "traffics."   Plaintiffs allege that Seaboard Corporation did not "obtain the authorization of Plaintiffs" to "direct" shipments to the container terminal (Am. Compl. ¶ 137), but Seaboard Corporation would not have needed Plaintiffs' permission even if the Cuban Government had not confiscated the Rosell Siblings' property.   As such, Seaboard Corporation cannot possibly have invaded Plaintiffs' purported legally protected interest.

Even if Seaboard Corporation "trafficked" in the confiscated property to which Plaintiffs own a claim, Plaintiffs must still demonstrate that Seaboard Corporation's alleged "trafficking" has *harmed* them in some concrete way. Standing is not established by the mere fact that Helms-Burton gives plaintiffs a right to sue persons who traffic in confiscated property. The Supreme Court "has rejected the argument that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right . . . . Article III standing requires a concrete injury even in the context of a statutory violation." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620–21 (2020) (quoting *Spokeo*, 136 S. Ct. at 1549) (internal quotations omitted). Plaintiffs, therefore, bear the burden of establishing that they have Article III standing based on an actual injury that is fairly traceable to Seaboard Corporation.

Plaintiffs are in the same position today as they were before Seaboard Corporation began "directing" shipments to Cuba. Any injury Plaintiffs have suffered is traceable to the actions of the Cuban Government, not Seaboard Corporation. Therefore, Plaintiffs have not demonstrated that Seaboard Corporation's conduct injured them in any way that would support Article III standing.

-21-

## IV.   **CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.


Dated:          November 4, 2021                MORGAN, LEWIS & BOCKIUS LLP

                                                */s/ Jody C. Barillare*
                                                Jody C. Barillare (#5107)
Robert M. Brochin (*pro hac vice*)              1201 N. Market Street, Suite 2201
Matthew Papkin (*pro hac vice*)                 Wilmington, DE 19801
600 Brickell Avenue, Suite 1600                 (302) 574-3000
Miami, Florida  33131                           jody.barillare@morganlewis.com
(305) 415-3000

Carl A. Valenstein (*pro hac vice*)
One Federal Street
Boston, MA 02110
(617) 341-7700

Brian Herman (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 309-6000                                  *Counsel for Defendant Seaboard*
                                                *Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Opening Brief complies with the Court's standing order dated November 6, 2019 regarding briefing in all cases.  The Opening Brief has been prepared using 14-point Times New Roman font and contains 4,981 words, excluding the case caption, tables of contents and authorities, signature blocks, and certificates.

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
