# EXHIBIT A

TRANSLATION

[Official Gazette, Page 13864

PUBLIC WORKS

Decree No. 2367

<u>Whereas</u>: Having seen the file processed by the Nacional Financing Agency of Cuba with regard to the applications made and projects submitted  by "Marítima Mariel, S.A." for the financing of and authorization for the construction of different works such as walls, docks, warehouses, dredging, fillings-in, and others in low lands and mangroves of its property, and in the maritime-terrestrial zone of the littoral adjacent to such land plot of the ownership of "Marítima Mariel, S.A." in the north coast of the province of Pinar del Rio, Bay of Mariel, Municipality of Mariel.

<u>Whereas</u>: Per articles number 264 y 271 of the current Constitution of the Republic, it is incumbent on the State the duty of propounding to the increase of the Nation's commerce and industrial development, to thus obtain the better performance of its economic possibilities above all in those cases that represent new sources of jobs through which the primordial goal of attaining the Nation's wellbeing is made true.

<u>Whereas</u>: In the last years, commerce has increased notably and with it the movement of commodities, the importation as well as exportation of them, without the parallel upsurge in necessary conveniences for the acquisition of larger advantages and the lowering of the prices of products through easier and safer handling.

<u>Whereas</u>: It is of public notice the growth had in the Port of Mariel during the last decade for, without large port facilities or guarantees for the workers and for the State, it has become the second port of importance in the Republic based on imports and exports movement, not only with regard to the number, size, and quality of the commodity moved therein but also in relation with the collection of custom revenue that has such an important role in the public economy.

Whereas: After the studies conducted by the National Financing Agency of Cuba by virtue of case initiated by the entity "Marítima Mariel, S.A." on the present and future conveniences and possibilities of said port of Mariel, it is concluded that, to rapidly carry forward the construction of docks and warehouses at the Port of Mariel that meet the necessary conditions to attend to the movement of that currently important port, it is convenient that the State grant to that entity all the facilities to build said docks and warehouses that shall also give facilities and guarantees to importers, exporters, workers, the State and the public at large.

Whereas: All that results from the file above-referred, in which the application of the aforesaid "Marítima Mariel, S.A." addressed to the Executive Branch is lodged, asking for a concession for the construction of said docks and warehouses, dredging and improvement of the maritime-terrestrial zone that shall need a partial filling-in; application file which has been processed according to the provisions of the Law-Decree No. 1998 of January 27,

[Official Gazette, Page 13865]

1955, where the approval granted by the Court of Accounts by its accord No.1868 of June 14 of the extant year is lodged.

Whereas: Said "Marítima Mariel, S.A.," which is an entity entirely of national capital, organized and formed under the Laws of the Republic, has among its social objects principally the construction of docks and maritime terminals for the loading and unloading of cargo, the movement of passengers, and of the public warehouses among others of similar nature; which social objects as well as the fees that it feels it should perceive in compensation for the services that it shall render have been planned and revised by Cuban Engineers and Public Accountants; and it has been verified that the business is affordable including that it has potential to fulfill the obligations that it shall enter into with the Nacional Financing Agency of Cuba, the official organ instituted to cooperate with and make possible the economic policy practice by Government of promoting the spirit of enterprise through private capitals to sponsor new centers of commercial

2

and industrial activity that create new and permanent sources of jobs and employment, granting those privates who cooperate with the development and growth of the national wealth all the guarantees and facilities necessary for the execution of their projects, and duly granting in cases like this the same benefits already granted in similar cases to entities established with objectives that are the same or alike.

<u>Whereas</u>: "Marítima Mariel, S.A." has requested through the National Financing Agency of Cuba to be authorized to convert to public use the dock and warehouse located on land of its property which were legalized and authorized for private use by Presidential Decree No.1655, of June 26, 1934, acquired by the deed of incorporation, converting said warehouses into public according to the provisions of the current Commercial Code.

<u>Whereas</u>: Exercising the powers on me vested by the laws, upon proposal of the National Financing Agency of Cuba, the Minister of Public Works being heard, and with the assistance of the Council of Ministers, I

## RESOLVE:

<u>First</u>: A concession is granted to "Maritima Mariel, S. A." to plan, study, execute, maintain, and exploit public docks and warehouses in the bay of Mariel, Province of Pinar del Rio, and for the construction of new buildings and works, without detriment to the vested rights of third parties and entities by virtue of previous and current concessions for the same goals as those expressed in the paragraph herein.

By ministry of this Decree, the study, planning, execution, operation, and exploitation of the following works are declared of public interest, of social interest, and of public convenience:

A) The construction of a Maritime Terminal with new docks, containment walls, public warehouses, tanks, silos, ferry mooring piers, and other construction works in the Bay of Mariel, Province of Pinar del Rio, contained in the memory and maps filed by that entity with the National Financing Agency of Cuba and to the stated in the last paragraph of Part Third.

3

B) The draining, dredging, and filling-in of part of said Bay of Mariel, in the maritime and terrestrial-maritime zone, in the portions and parts indicated in the memory and maps referred to, needed for the construction, unfolding, operation, and exploitation of said project for a Maritime Terminal.

C) The realization of works, constructions and installations of machinery, devices, instruments, buildings, and whatever equipment be deemed necessary or convenient for the achievement of the aforesaid goals.

Second: The declaration of public utility contained in Part First entails the following rights in favor of the concessionary of the works:

a) The temporary or permanent occupation and use of the empty lots and waters of public domain or of the State, the Province, or the Municipality's ownership insofar as those be indispensably necessary for the execution and exploitation of the jobs and works of reference.

b) The power of condemnation by expropriation according to the Decree No. 595, of May 22, 1907 or to any subsequent regulation regarding the ownership, possession and use of any private real estate and ownership right whatever which shall be occupied for the works, uses and services dealt with in Part First; procedure that it may carry out also in relation to whatever right granted by the State, the Province, or the Municipality in relation with the maritime-terrestrial zone or the empty lots of public domain or of the ownership of said entities of the Nation.

c) The right of imposing any type of easement on realty of private property for the construction of any type of ways of communications, access, movement and parking of vehicles, for the establishment of air or underground electric lines, for the laying of pipes and conductors of water, gas, ventilation and drainage, and in general for whatever turn out to be inherent to or necessary for the goals of carrying out, maintaining and exploiting the works dealt with said paragraph First, with the faculty of resorting also in these cases to expropriation as in the previous subsection.

d) The right of evicting any leaseholder, sharecropper, tenants-at-sufferance, and otherwise tenants by any concept from any realty or installation that shall be temporarily or permanently occupied for the works referred to in the aforesaid Part

4

[Official Gazette, Page 13866]

First, paying to those so evicted a compensation equivalent to the sum of one year of the rent or lease that they pay in each case.

e) The right to exercise the aforesaid related acts by means of the enforcement of the provisions contained in the Law-Decrees 1015, of August 7, 1953, and 1998 of January 27, 1955, considering that the National Financing Agency of Cuba shall provide the financing for said works.

Third: This concession shall be granted for a term of 70 years counted from the termination of the works, which, on expiration of said term shall revert to the State. The concession shall be totally forfeited if the execution of any of the works referred to in letters A), B), and C) of Part First do not start within the term of 18 months counted from the publication of this Decree in the OFFICIAL GAZETTE, and if they were not completed within the four years following the beginning of the same, or if the provisions of the services were abandoned for a period longer than two years, except in cases of war or *force majeure*. Likewise the concession shall be partially forfeited regarding any of the objectives indicated in letters A), B) and C) of Part Fist, if within a term of three years counted from the day this Decree come into force, the works necessary for any of said objectives were not initiated and if the same were not completed in four years following their commencement, or if the provision of the services were abandoned for a period larger than two years, except in cases of war or force majeure.

Within the term of five years counted from the day when this Decree come into force, the entity "Marítima Mariel, S.A." shall indicate what concessions it intends to exploit; and all other works that it shall not intend to exploit shall be deemed forfeited if the definitive project shall not include all the improvements and services listed in Part First of this Decree. In so declaring before the President of the Republic, "Marítima Mariel, S.A.," through the National Financing Agency of Cuba shall present the blueprint of the works that it intend to carry out, with details relative to the cost of the same, the form of execution of the projects both in the constructive and financial aspects, and the additional data that may turn out to be necessary for the due enforcement of the rules on forfeiture contained in the Part herein.

5

Within the term of ten years counted from the date when this Decree come into force, the entity "Marítima Mariel, S.A." could, through the National Financing Agency of Cuba that shall likewise give advice regarding its convenience, execution and financing, request and obtain a public utility concession according to the goals of this Decree, for the study, planning, execution, operation, and exploitation of any of the works mentioned therein, be those included or not in the Memory and Maps submitted to the National Financing Agency of Cuba, without detriment to its right to expand, adapt, or modify the buildings and works executed  according to the needs of those goals and to the improvement of the public services as it may be required by or may be convenient to foresee the changes that might come up in the technology of the industry or in commerce.

The public concession herein shall likewise be forfeited if, within the term of one year counted from the publication of the Decree herein, the financing operation for the construction and operation of said concession in principle agreed to by the National Financing Agency of Cuba and "Marítima Mariel, S. A." shall not be formalized through the execution of the pertinent deed.

Fourth: "Marítima Mariel, S.A." shall provide the services of its business to the State, the Province, and the Municipality with a thirty percent (30%) bonification of discount in its fees.

Fifth: The highest fees that "Marítima Mariel, S.A." may collect shall be those current at the moment of the promulgation of the Decree herein at the Port of Havana; and it is authorized to alter said fees at any time complying with the dispositions that might be in force on the subject, upon the National Financing Agency of Cuba's prior approval, while debt balances owed it were not satisfied.

Sixth: "Marítima Mariel, S.A." is authorized to record this concession in the Property Record's Office, to issue mortgage bonds secured by its properties, including the concessions to which this Decree refers, to record them, and to freely alienate those properties

Seventh: Should the President of the Republic consider it necessary for the service of the Port to mark the works with a light, the concessionaries shall be obligated to put such light in the site with the appearance that might be designated.

6

Eighth: In case that the Treasury consider it necessary, the concessionaries shall be obligated to build at their expense, at the location that they be instructed to, a booth for the lodging of the Custom and Immigration Inspectors immediate to the works.

Ninth: The construction of the docks and the realization of all the works referred to in Part First, shall be subject to, supervised, and approved by the National Financing Agency of Cuba for purposes of financing.

Tenth: It is hereby granted and "Marítima Mariel, S.A." is hereby authorized to the conversion to the public service of the dock and warehouses with its modifications, expansions, and improvements the private use of which was granted by Presidential Decree number 1655 of June 26, 1934; being [the corporation] able to freely encumber and alienate all said properties according to the provisions of Part Sixth of the Decree herein.

Eleventh: This concession shall be considered also included among those of articles 44 and 51 of the current Law of Ports, and it is so granted

[OFFICIAL GAZETTE, Page 13867]

subject to the provisions of articles 50 and 54 of said Law.

Twelfth: "Marítima Mariel, S. A." is obligated to place a bond as guarantee for the performance of these provisions, equivalent to one percent (1%) of the budget of the works that it shall build forthwith; said guarantee shall be left without effect when it proves that the value of the works executed cover a third of the budget.

Thirteenth: The declaration of public utility contained in the Decree herein is issued because the works are necessary for the improvement of hygiene in the zone, and also because they tend to promote national wealth.

Fourteenth: The forfeitures proposed in the Decree herein, in what regards to the non-execution of the works within the term fixed, shall only affect the non-executed parts of the project according to the partial receipts practiced and referred.

Fifteenth: Given the nature of the works and the discontinuity that it is produced in the littoral with the walls, docks, and constructions and so forth under construction project, the surveillance zone contemplated in articles 7 and 10 of the Law of Ports shall be moved in and be relocated to the back end of the property of what shall become the concession, understanding that the front of the same properties is the one that faces the sea.

Sixteenth: The concession and the conversion to public use granted by the Decree herein are issued in accordance with the faculties given to the Executive by Law-Decree No. 1998 of January 27, 1955.

Seventeenth: The Minister of Public Works and the National Financing Agency of Cuba are charge with the enforcement this Decree in the parts concerning each one.

Eighteenth: This concession is granted without prejudice to the ownership right of third parties, and in the understanding that the corporation is obligated to comply with all applicable provisions contained in Law-Decrees numbers 1015, of August 7, 1953, and 1998 of January 27, 1954, and with those of the Decree herein.

Nineteenth: All Decrees, orders, or administrative dispositions opposed to the provisions of the Decree herein are deemed abrogated. The Decree shall become effective on the day of its publication in the OFFICIAL GAZETTE of the Republic.

Issue at the Palace of the Presidency, in Havana, on the third day of the month of August of 1955.

Fulgencio Batista, President
Jorge García Montes, Prime Minister
Nicolás R. Arroyo, Minister of Public Works

8

TRANSCRIPTION

[Gaceta Oficial, Página 13864]

OBRAS PUBLICAS

Decreto No. 2367

Por Cuanto: Visto el expediente instruido en Financiera Nacional de Cuba, con motivo de solitudes y proyectos presentados por "Marítima Mariel, S.A.", de financiamiento y autorización para construir diversas obras de muros, muelles, almacenes, dragados, relleno y otras en terrenos bajos y manglares de su propiedad y en la zona marítimo terrestre del litoral colindante con dicha parcela de terreno propiedad de "Marítima Mariel, S.A." en la costa norte de la provincia de Pinar del Rio, Bahía de Mariel, Término Municipal del Mariel.

Por Cuanto: Por los artículos números 264 y 271 de la vigente Constitución de la República, se impone al Estado el deber de propender a incrementar el desarrollo del comercio y la industria de la Nación, para así obtener el mejor rendimiento de sus posibilidades económicas, sobre todo, en aquellos casos que representen nuevas fuentes de trabajo, con lo cual se realiza el fin primordial de obtener el bienestar de la Nación.

Por Cuanto: En los últimos años se ha incrementado de manera notable el comercio y con ello el movimiento de mercancías, tanto en la importación como en la exportación, sin que a ese auge marchen aparejadas las facilidades necesarias para obtener mayores ventajas y abaratamiento de los productos mediante su más fácil y segura manipulación.

Por Cuanto: Es notorio el incremento habido en el Puerto del Mariel en la última década que, sin grandes facilidades portuarias y de garantías para los trabajadores y el Estado, ha llegado a ser el segundo puerto de importancia de la República en el movimiento de importación y exportación, no solo en cuanto al número, tamaño y calidad de las mercancías en él movidas, sino también en relación con las recaudaciones aduanales que tan importante papel juegan en la economía pública.

Por Cuanto: Después de estudios llevados a cabo por la Financiera Nacional de Cuba, a virtud de expediente iniciado por la entidad "Marítima Mariel, S.A." sobre las conveniencias y posibilidades presentes y futuras de dicho puerto del Mariel, se llega a la conclusión de que es conveniente, a fin de llevar rápidamente adelante la construcción de muelles y almacenes en el Puerto del Mariel que reúnan las condiciones necesarias para atender al movimiento de ese actualmente importante puerto, que por el Estado se concedan a todas las facilidades a esta entidad para construir dichos muelles y almacenes, que darán, además, facilidades y garantías a importadores, exportadores, trabajadores, al estado y al público en general.

Por Cuanto: Todo ello resulta del expediente anteriormente aludido, en el cual obra solicitud de la referida "Marítima Mariel, S.A.", dirigida al Poder Ejecutivo, pidiendo una concesión para la construcción de dichos muelles y almacenes, dragado y aprovechamiento de la zona marítimo-

terrestre la cual será preciso rellenar en parte; expediente este que ha sido tramitado conforme a las disposiciones de la Ley-Decreto No. 1998 de 27 de enero

[Gaceta Oficial, Página 13865]

de 1955, en la cual consta la aprobación dada por el Tribunal de Cuentas, por su acuerdo No.1868 de junio 14 del año en curso.

Por Cuanto: Dicha "Marítima Mariel, S.A." que es una entidad organizada y constituida al amparo de las Leyes de la República , enteramente con capital nacional, tiene entre sus objetos sociales principalmente, la construcción de muelles y terminales marítimas para la carga y descarga de mercancías, movimiento de pasajeros y de almacenes públicos; entre otros de índole similar, los cuales objetivos han sido planificados y revisados por Ingenieros y Contadores Públicos cubanos, así como las tarifas que estima debe percibir en compensación de los servicios que prestara, habiéndose comprobando la costeabilidad de ese negocio, incluso su potencialidad para cumplir con compromisos que se ha de contraer con la Financiera Nacional de Cuba, órgano oficial este instituido para cooperar y hacer posible la política económica practicada por el Gobierno de propiciar el espíritu de empresa mediante las inversiones de capitales privados en el fomento de nuevos centros de actividad comercial e industrial que proporcionen nuevas y permanentes fuentes de trabajo y empleo, otorgando a particulares que cooperen al desarrollo y bienestar de la riqueza nacional, todas las garantías y facilidades necesarias para la ejecución de sus planes, debiendo otorgarse en casos como el presente los mismos beneficios concedidos ya en casos similares a entidades establecidas con los mismos o parecidos objetivos.

Por Cuanto: "Marítima Mariel, S.A." ha solicitado por conducto de la Financiera Nacional de Cuba que se le autorice para convertir en uso público el muelle y almacenes, sitos estos en terrenos de su propiedad que para su uso privado fueron legalizados y autorizados por el Decreto Presidencial No. 1655, de 26 de junio de 1934, que con tal objeto hubo de adquirir por la escritura de su constitución, convirtiendo en públicos dichos almacenes conforme a las disposiciones del Código de Comercio vigente.

Por Cuanto: En uso de las facultades que me están conferidas por las leyes, a propuesta de Financiera Nacional de Cuba, oído el Ministro de Obras Públicas y asistido del Consejo de Ministros,

RESUELVO:

Primero: Se otorga a la "Marítima Mariel, S. A." concesión para planear, estudiar, ejecutar, mantener y explotar muelles y almacenes públicos en la bahía del Mariel, Provincia de Pinar del Rio, y la construcción de nuevas edificaciones y obras, sin perjuicio de los derechos adquiridos

2

por terceras personas y entidades en virtud de anteriores concesiones vigentes para los fines que en el presente párrafo se expresan.

Se declara de utilidad pública, de interés social y de conveniencia pública por ministerio de este Decreto, el estudio, la planificación, la ejecución, la operación y la explotación de las siguientes obras:

A) La edificación de una Terminal Marítima con nuevos muelles, muros de contención, almacenes públicos, tanques, silos, atraque de ferries y demás obras de construcción, en la Bahía del Mariel, Provincia de Pinar del Rio, contenidas en la memoria y planos presentados por esa entidad a la Financiera Nacional de Cuba o a lo expresado en el último párrafo del Apartado Tercero.

B) La desecaciones, dragado y relleno de parte de la dicha Bahía del Mariel, en la zona marítima y marítimo-terrestre en las porciones y partes que constante de la referida memoria y planos, necesarios para la construcción, desenvolvimiento, operación y explotación del mentado proyecto de una Terminal Marítima.

C) La realización de obras, construcciones e instalaciones de maquinarias, aparatos, instrumentos, edificios y cuentos equipos se estimen necesarios o convenientes para la consecución de los anteriores fines.


Segundo: La declaración de utilidad pública contenida en el apartado primero, lleva aparejados a favor del concesionario de las obras, los derechos siguientes:

a) La ocupación y utilización, temporales o permanentes, de los terrenos y aguas de dominio público o de propiedad de Estado, la Provincia o el Municipio, en cuanto resulten indispensables para la ejecución y explotación de las obras y trabajos de referencia.

b) El derecho de expropiación forzosa, de acuerdo con el Decreto No. 595 de 22 de mayo de 1907, o cualquiera otra disposición posterior respecto del dominio, posesión o uso de cualesquiera inmuebles y derechos de propiedad particular que deban ser ocupados para los trabajos, usos y servicios de que trata el Apartado Primero; procedimiento que podrá utilizar también en relación con cualesquiera derechos concedidos por el Estado, la Provincia o el Municipio en relación con la zona marítimo-terrestre, o terrenos de dominio público o de propiedad de dichas entidades de la Nación.

c) El derecho a imponer sobre bienes de propiedad particular cualquiera clase de servidumbre para la construcción de cualquier clase de vía de comunicaciones, acceso, movimiento y estacionamiento de vehículos, establecimiento de líneas eléctricas, aéreas o soterradas, instalación de tuberías y conductos para agua, gas, ventilación o drenaje, y, en general para cuanto resulta inherente o se estime necesario para los fines de realizar, mantener y explotar las obras de que trata dicho párrafo Primero, con la facultad de acudir también en estos casos a la expropiación forzosa, como se prevé en el inciso anterior.

3

d) El derecho a desalojar a cualesquiera arrendatarios, apareceros, precaristas u ocupantes por cualquier otro concepto, de cualesquiera inmuebles o instalaciones que deban ser ocupados temporal o permanentemente para las obras a que se refiere el repetido apartado

[Gaceta Oficial, Página 13866]

primero, con pago a los así desalojados de una indemnización equivalente al importe de un ano de renta o alquiler que pague en su caso.

e) El derecho a realizar los anteriormente relacionados actos mediante la aplicación de las disposiciones contenidas en las Leyes-Decretos 1015 de 7 de agosto de 1953 y 1998 de 27 de enero de 1955, por cuanto Financiera Nacional de Cuba proveerá el financiamiento de dichas obras.

Tercero: Esta concesión se otorgará por termino de 70 años, contados desde la terminación de las obras, las cuales, al vencimiento de dicho termino, serán revertidas al Estado. La concesión caducará totalmente si no se comenzara la ejecución de ninguna de las obras señaladas en las letras A), B) y C) del apartado Primero, dentro del término de 18 meses a contar desde la publicación en la GACETA OFICIAL de este Decreto y no quedaren terminadas en los cuatro años posteriores al inicio de la misma o se abandonara la prestación de los servicios por un periodo mayor de dos años, excepto en los casos de guerra o fuerza mayor. La concesión caducará, asimismo, de modo parcial, en cuanto a cualesquiera de los objetivos señalados en las letras A), B) y C) del apartado Primero, si dentro del término de tres años a contar de la vigencia de este Decreto, no se iniciasen las obras necesarias para cualesquiera de dichos objetivos y si las mismas no quedan terminadas en los cuatro años posteriores a su inicio o se abandonara la prestación de los servicios por un periodo mayor de dos años, excepto en los casos de guerra o fuerza mayor.

Dentro del término de cinco años a contar de la vigencia de este Decreto, la entidad "Marítima Mariel, S.A." precisará las concesiones que intenta explotar y se entenderán caducadas los obras que no intente explotar si el proyecto definitivo no comprendiese todos los aprovechamientos y servicios señalados en el apartado Primero de este Decreto. Al hacerse una declaración al Presidente de la República "Marítima Mariel, S.A.", por conducto de Financiera Nacional de Cuba, presentara el ante-proyecto de la sobras que intente realizar con detalles relativos a costos del mismo, forma de ejecución de proyectos, tanto en su aspecto constructivo como financiero, y los datos adicionales que resulten necesarios para la debida aplicación de las reglas sobre caducidad contenidas en el presente apartado.

Dentro del término de diez años a contar de la vigencia de este Decreto, la entidad "Marítima Mariel, S.A." podrá, por conducto de Financiera Nacional de Cuba que dictaminará, igualmente respecto a la conveniencia, ejecución y financiamiento, solicitar y obtener concesión de utilidad pública a los fines de este Decreto, para el estudio, la planificación, la ejecución, la operación y explotación de cualesquiera obras mencionadas en el mismo, háyanse incluido o no en la Memoria

4

y Planos presentados a Financiera Nacional de Cuba, sin perjuicio de su derecho a ampliar, adaptar o modificar a las necesidades de esos objetivos y al mejoramiento del servicio público las edificaciones y obras ejecutadas, conforme lo requieran o sea conveniente prever por los cambios que surjan en la técnica de la industria o el comercio.

Igualmente caducará la presente concesión publica, si dentro del término de un año a contar de la publicación del presente Decreto, no se formalizara mediante el otorgamiento de la correspondiente escritura, la operación de financiamiento en principio concertada entre Financiera Nacional de Cuba y "Marítima Mariel, S. A." para la construcción y operación de dicha concesión.

Cuarto: La "Marítima Mariel, S.A." prestará al Estado, la Provincia o Municipio los servicios que le sean propios con una bonificación del treinta por ciento (30%) de descuento en sus tarifas.

Quinto: Las tarifas máximas que podrá cobra la "Marítima Mariel, S.A." serán las que rijan en el Puerto de La Habana en el momento de promulgarse el presente Decreto, y se la autoriza para alterar en cualquier tiempo dichas tarifas cumpliendo las disposiciones que se encuentre vigentes sobre la materia, previa la aprobación de Financiera Nacional de Cuba, mientras no se le hubiese satisfecho su acreencia.

Sexto: La "Marítima Mariel, S.A." queda autorizada para inscribir esta concesión en el Registro de la Propiedad, para emitir bonos hipotecarios con la garantía de sus propiedades, incluyendo las concesiones a que se refiere este Decreto, inscribirlos en el Registro de la Propiedad y enajenar libremente esos bienes.

Séptimo: Si el Presidente de la República considerase necesario para el servicio del Puerto señalar las obras con una luz, los concesionarios tendrán la obligación de colocarla en el sitio y con la apariencia que se designe.

Octavo: En el caso de que por el Ramo de Hacienda se considere necesario, los concesionarios quedan obligados a construir por su cuenta una casilla inmediata a las obras en el lugar que se les designe, para el alojamiento de los Inspectores de Aduana e Inmigración.

Noveno: La edificación de los muelles y la realización de todas las obras a que se refiere el apartado Primero, deberán ser sometidas, supervisadas y aprobadas por Financiera Nacional de Cuba, a los fines de su financiamiento.

5

Décimo: Se autoriza y otorga a "Marítima Mariel, S.A." la conversión al servicio público del muelle y almacenes cuyo uso particular fue concedido por el Decreto Presidencial número 1655 de 26 de junio de 193, con sus modificaciones, ampliaciones y mejoras, pudieron gravar y enajenar libremente todos dichos bienes conforme a lo dispuesto en el apartado sexto del presente Decreto.

Undécimo: Esta concesión se considerará, además, comprendida entre las que determinan los artículos 44 y 51 de la vigente Ley de Puertos y se otorga

[GACETA OFICIAL, Página 13867]

quedando sujeto a lo prescrito en los artículos 50 y 54 de dicha Ley.

Duodécimo: La "Maritima Mariel, S. A." queda obligada a constituir una fianza como garantía del cumplimiento de estas prescripciones, equivalente al uno por ciento (1%) del presupuesto de las obras que ha de construir de inmediato, cuya garantía será dejada sin efecto cuando acredite estar las mismas ejecutadas por valor de una tercera parte de su presupuesto.

Décimo Tercero: La declaración de utilidad pública contenida en el presente Decreto se hace por ser necesarias las obras para mejorar la higiene de la zona, y también por tender al fomento de la riqueza nacional.

Décimo Cuarto: Las caducidades propuestas en el presente Decreto en lo que se refiere a la no realización de las obras dentro del término fijado, solamente afectarán a la parte no ejecutada del proyecto de acuerdo con las recepciones parciales practicadas y referidas.

Décimo Quinto: Dada la naturaleza de las obras y discontinuidad que se produce en el litoral con los muros, muelles y construcciones y demás que se proyecta construir, la zona de vigilancia contemplada en los artículos 7 y 10 de la Ley de Puertos se internará situándola al fondo de la propiedad que constituirá la concesión, entendiéndose por el frente de las mismas el que dé al mar.

Décimo Sexto: La concesión otorgada y la conversión a pública concedida por el presente Decreto, se hace en uso de las facultades concedidas al Ejecutivo por la Ley-Decreto No. 1998 de 27 de enero de 1955.

6

<u>Décimo Séptimo</u>: Quedan encargados del cumplimiento del presente Decreto el Ministro de Obras Públicas y Financiera Nacional de Cuba, en la parte que a cada cual concierne.

<u>Décimo Octavo</u>: Esta concesión se otorga sin perjuicio del derecho de propiedad de terceros y en la inteligencia de quedar obligada la compañía a cuanto le era aplicable de las disposiciones contenidas en las Leyes-Decretos números 1015 de 7 de agosto de 1953 y 1998 de 27 de enero de 1954, y en este Decreto.

<u>Décimo Noveno</u>: Se dejan sin efecto cuantos Decretos, órdenes o disposiciones administrativas se opongan a lo dispuesto en el presente Decreto que comenzara a regir desde la fecha de su publicación en la GACETA OFICIAL de la República.

Dado en el Palacio de la Presidencia, en La Habana, a los tres días del mes de agosto de 1955.

Fulgencio Batista, Presidente

Jorge García Montes, Primer Ministro

Nicolás R. Arroyo

Ministro de Obras Públicas

7

Agosto 15 de 1955

## GACETA OFICIAL

13864

y el Inciso 10 del Artículo 15 del Reglamento, por que ambos preceptos exigen ese requisito "si hubie- re comenzado operaciones comerciales," la entidad solicitante. La Compañía Cubana de Conductores Eléctricos, S. A., no ha iniciado aún esas operacio- nes, por hallarse pendiente de la forma en que se resuelva la presente solicitud. De todos modos, si fuese necesario cumplir el requisito indicado, de inmediato nos inscribiríamos en la Zona Fiscal co- rrespondiente.

#### Por tanto:

Al señor Ministro de Hacienda suplico, por con- ducto del señor Primer Subsecretario, se sirva tener por presentado este escrito (por quintuplicado) con los documentos y copias que se acompañan; por solicitada la protección económica correspondiente a industria nueva en la forma dispuesta por la Ley-Decreto 1038 de 1953; y en su día, previa la tramitación correspondiente, otorgar a favor de la Compañía Cubana de Conductores Eléctricos, S. A., esa protección como operadora de una industria nueva consistente en la producción y elaboración de conductores eléctricos de todos los tipos y tubos metálicos para instalaciones eléctricas, declarándo- la incluida en los beneficios que esa protección eco- nómica implica en cuanto a las exenciones fiscales, arancelarias y demás que concede la legislación vi- gente para estos casos.

Primer Otrosí: Se acompañan un "Estado de Costo de Fabricación Estimado" y otro "Estado de Ganancias y Pérdidas Estimado", marcados con los números 6 y 7.

Segundo Otrosí: Si se estimare que la exposi- ción contenida en este escrito o la documentación presentada con él no es suficiente al objeto que se persigue, ofrezco toda la información complemen- taria que se requiriese, la cual presentaré tan pron- to se me indique.

Tercer Otrosí: En cumplimiento de lo dispuesto en la Ley-Decreto 449 de 1952, declaro bajo jura- mento que no soy contribuyente directo del Im- puesto sobre la Renta Personal, debido a que aún no tengo ingresos en el territorio de Cuba, pero me inscribiré así que deba hacerlo."

Cuarto Otrosí: Señalo como domicilio de la Com- pañía, para las notificaciones y citaciones que se le deban hacer, el despacho de su Secretario (Dr. Er- nesto Dihigo) sito en Aguiar 556, Departamento 43. Teléfonos M—8308 y M—8209.

Compañía Cubana de Conductores Eléctricos, S. A.

Mauricio Pessis,
Presidente.

Y a los efectos de su publicación en la GACETA OFICIAL de la República, conforme lo dispone el Artículo 17 del Decreto 2136 de 1954, expido la presente, en La Habana, a nueve de agosto de mil novecientos cincuenta y cinco.

1—22481—6876—6895—15

## OBRAS PUBLICAS

Decreto N° 2367

Por Cuanto: Visto el expediente instruido en Fi- nanciera Nacional de Cuba, con motivo de soli- tudes y proyectos presentados por "Marítima Ma- riel, S. A", de financiamiento y autorización para construir diversas obras de muros, muelles, alma- cenes, dragados, relleno y otras en terrenos bajos y manglares de su propiedad y en la zona marítima y terrestre del litoral coindante con dicha parcela de terreno propiedad de "Marítima Mariel, S. A" en la costa norte de la provincia de Pinar del Río, Bahía del Mariel, Término Municipal del Mariel.

Por Cuanto: Por los artículos números 264 y 271 de la vigente Constitución de la República, se im- pone al Estado el deber de propender a incrementar el desarrollo del comercio y la industria de la Na- ción, para así obtener el mejor rendimiento de sus posibilidades económicas, sobre todo, en aquellos casos que representan nuevas fuentes de trabajo, con lo cual se realiza el fin primordial de obtener el bienestar de la Nación.

Por Cuanto: En los últimos años se ha incremen- tado de manera notable el comercio y con ello el movimiento de mercancías, tanto en la importación como en la exportación, sin que a ese auge mar- chen aparejadas las facilidades necesarias para ob- tener mayores ventajas y abaratamiento de los pro- ductos mediante su más fácil y segura manipulación.

Por Cuanto: Es notorio el incremento habido en el Puerto del Mariel en la última década que, sin grandes facilidades portuarias y de garantías para los trabajadores y el Estado, ha llegado a ser el segundo puerto de importancia de la República en el movimiento de importación y exportación, no sólo en cuanto al número, tamaño y calidad de las mercancías en él movidas, sino también en relación con las recaudaciones aduanales que tan importante papel juegan en la economía pública.

Por Cuanto: Después de estudios llevados a cabo por la Financiera Nacional de Cuba, a virtud de expediente iniciado por la entidad "Marítima Ma- riel, S. A" sobre las conveniencias y posibilidades presentes y futuras de dicho puerto del Mariel, se llega a la conclusión de que es conveniente, a fin de llevar rápidamente adelante la construcción de muelles y almacenes en el Puerto del Mariel que reúnan las condiciones necesarias para atender al movimiento de ese actualmente importante puerto, que por el Estado se concedan todas las facilidades a esa entidad para construir dichos muelles y alma- cenes, que darán, además, facilidades y garantías a importadores, exportadores, trabajadores, al Es- tado y al público en general.

Por Cuanto: Todo ello resulta del expediente an- teriormente aludido, en el cual obra solicitud de la referida "Marítima Mariel, S. A", dirigida al Poder Ejecutivo, pidiendo una concesión para la construcción de dichos muelles y almacenes, draga- do y aprovechamiento de la zona marítimo terrestre, la cual será preciso rellenar en parte; expediente éste que ha sido tramitado conforme a las dispo- siciones de la Ley-Decreto N° 1998 de 27 de enero

de 1955, en el cual consta la aprobación dada por el Tribunal de Cuentas, por su acuerdo N° 1805 de junio 14 del año en curso.

Por Cuanto: Dicha "Marítima Mariel, S. A." que es una entidad organizada y constituida al amparo de las Leyes de la República, enteramente con capital nacional, tiene entre sus objetos sociales, principalmente, la construcción de muelles y terminales marítimas para la carga y descarga de mercancías, movimiento de pasajeros y de almacenes públicos; entre otros de índole similar, los cuales objetivos han sido planificados y revisados por Ingenieros y Contadores Públicos cubanos, así como las tarifas que estima debe percibir en compensación de los servicios que prestará, habiéndose comprobado la costeabilidad de ese negocio, incluso su potencialidad para cumplir con los compromisos que ha de contraer con la Financiera Nacional de Cuba, órgano oficial éste instituido para cooperar y hacer posible la política económica practicada por el Gobierno de propiciar el espíritu de empresa mediante las inversiones de capitales privados en el fomento de nuevos centros de actividad comercial e industrial que proporcionen nuevas y permanentes fuentes de trabajo y empleo, otorgando a particulares que cooperen al desarrollo y bienestar de la riqueza nacional, todas las garantías y facilidades necesarias para la ejecución de sus planes, debiendo otorgarse en casos como el presente, los mismos beneficios concedidos ya en casos similares a entidades establecidas con los mismos o parecidos objetivos.

Por Cuanto: "Marítima Mariel, S. A." ha solicitado por conducto de la Financiera Nacional de Cuba que se le autorice para convertir en uso público el muelle y almacenes, sitos éstos en terrenos de su propiedad que para uso privado fueron legalizados y autorizados por el Decreto Presidencial N° 1655 de 26 de junio de 1934, que con tal objeto hubo de adquirir por la escritura de su constitución, convirtiendo en públicos dichos almacenes conforme a las disposiciones del Código de Comercio vigente.

Por Tanto: En uso de las facultades que me están conferidas por las Leyes, a propuesta de Financiera Nacional de Cuba, oído el Ministro de Obras Públicas y a sentido del Consejo de Ministros.

**Resuelvo:**

Primero: Se otorga a la "Marítima Mariel, S. A." concesión para planear, estudiar, ejecutar, mantener y explotar muelles y almacenes públicos en la bahía del Mariel, Provincia de Pinar del Río, y la construcción de nuevas edificaciones y obras, sin perjuicio de los derechos adquiridos por terceras personas o entidades en virtud de anteriores concesiones vigentes, para los fines que en el presente párrafo se expresan.

Se declara de utilidad pública, de interés social y de conveniencia pública, por ministerio de este Decreto, el estudio, la planificación, la ejecución, la operación y explotación de las siguientes obras:

A) La edificación de una Terminal Marítima con nuevos muelles, muros de contención, almacenes públicos, tanques, silos, atraque, de ferries y demás obras de construcción, en la Bahía del Mariel, Provincia de Pinar del Río, contenidas en la memoria y planos presentados por esa entidad a la Financiera Nacional de Cuba o a lo expresado en el último párrafo del Apartado Tercero.

B) La desecación, dragado y relleno de parte de dicha Bahía del Mariel, en la zona marítima y marítimo-terrestre en las porciones y partes que constan de la referida memoria y planos, necesarios para la construcción, desenvolvimiento, operación y explotación del mentado proyecto de una Terminal Marítima.

C) La realización de obras, construcciones e instalaciones de maquinarias, aparatos, instrumentos, edificios y cuantos equipos se estimen necesarios o convenientes para la consecución de los anteriores fines.

Segundo: La declaración de utilidad pública contenida en el apartado primero, lleva aparejados a favor de la concesionaria de las obras, los derechos siguientes:

a) La ocupación y utilización, temporales o permanentes, de los terrenos y aguas de dominio público o de propiedad privada, del Estado, la Provincia o el Municipio, en cuanto resulten indispensables para la ejecución y explotación de las obras y trabajos de referencia.

b) El derecho de expropiación forzosa, de acuerdo con el Decreto No. 595, de 22 de mayo de 1907, o cualquiera otra disposición posterior respecto del dominio, posesión o uso de cualesquiera inmuebles y derechos de propiedad particular que deban ser ocupados para los trabajos, usos y servicios de que trata el Apartado Primero; procedimiento que podrá utilizar también en relación con cualesquiera derechos concedidos por el Estado, la Provincia o el Municipio en relación con la zona marítimo-terrestre, o terrenos de dominio público o de propiedad de dichas entidades de la Nación.

c) El derecho a imponer sobre bienes de propiedad particular cualquiera clase de servidumbre para la construcción de cualquier clase de vía de comunicaciones, acceso, movimiento y estacionamiento de vehículos, establecimiento de líneas eléctricas, aéreas o soterradas, instalación de tuberías y conductos para agua, gas, ventilación o drenaje, y, en general, para cuanto resulta inherente o se estime necesario para los fines de realizar, mantener y explotar las obras de que trata dicho párrafo Primero, con la facultad de acudir también en estos casos a la expropiación forzosa, como se prevé en el inciso anterior.

d) El derecho de desalojar a cualesquiera arrendatarios, aparceros, precaristas u ocupantes por cualquier otro concepto, de cualesquiera inmuebles o instalaciones que deban ser ocupados temporal o permanentemente para las obras a que se refiere el repetido apartado

13866

primero, con pago a los así desalojados de una indemnización equivalente al importe de un año de renta o alquiler que pague en su caso.

c) El derecho de realizar los anteriormente relacionados actos mediante la aplicación de las disposiciones contenidas en las Leyes Decretos 1015 de 7 de agosto de 1953 y 1998 de 27 de enero de 1955, por cuanto Financiera Nacional de Cuba proveerá el financiamiento de dichas obras.

Tercero: Esta concesión se otorgará por término de 70 años, contados desde la terminación de las obras, las cuales, al vencimiento de dicho término, serán revertidas al Estado. La concesión caducará totalmente si no se comenzara la ejecución de ninguna de las obras señaladas en las letras A) B) y C) del apartado Primero, dentro del término de 18 meses a contar desde la publicación en la GACETA OFICIAL de este Decreto y no quedaren terminadas en los cuatro años posteriores al inicio de la misma o se abandonara la prestación de los servicios por un período mayor de dos años, excepto en los casos de guerra o fuerza mayor. La concesión caducará, asimismo, de modo parcial, en cuanto a cualesquiera de los objetivos señalados en las letras A), B) y C) del apartado Primero, si dentro del término de tres años a contar de la vigencia de este Decreto, no se iniciasen las obras necesarias para cualesquiera de dichos objetivos y si las mismas no quedan terminadas en los cuatro años posteriores a su inicio o se abandonara la prestación de los servicios por un período mayor de dos años, excepto en los casos de guerra o fuerza mayor.

Dentro del término de cinco años a contar de la vigencia de este Decreto, la entidad "Marítima Mariel, S. A." precisará las concesiones que intenta explotar y se entenderán caducadas las obras que no intente explotar si el proyecto definitivo no comprendiese todos los aprovechamientos y servicios señalados en el apartado Primero de este Decreto. Al hacerse esta declaración al Presidente de la República "Marítima Mariel, S. A.", por conducto de Financiera Nacional de Cuba, presentará el ante-proyecto de las obras que intente realizar, con detalles relativos a costos del mismo, forma de ejecución de proyectos, tanto en su aspecto constructivo como financiero, y los datos adicionales que resulten necesarios para la debida aplicación de las reglas sobre caducidad contenidas en el presente apartado.

Dentro del término de diez años a contar de la vigencia de este Decreto, la entidad "Marítima Mariel, S. A." podrá, por conducto de Financiera Nacional de Cuba que dictaminará, igualmente, respecto a la conveniencia, ejecución y financiamiento, solicitar y obtener concesión de utilidad pública a los fines de este Decreto, para el estudio, la planificación, la ejecución, la operación y explotación de cualesquiera obras mencionadas en el mismo, háyanse incluído o no en la Memoria y Planos pre-

sentados a Financiera Nacional de Cuba, sin perjuicio de su derecho a ampliar, adaptar o modificar juicio de su derecho a ampliar, adaptar o modificar a las necesidades de esos objetivos y al mejoramiento del servicio público las edificaciones y obras ejecutadas, conforme lo requieran o sea conveniente prever por los cambios que surjan en la técnica de la industria o del comercio.

Igualmente caducará la presente concesión pública, si dentro del término de un año a contar de la publicación del presente Decreto, no se formalizara mediante el otorgamiento de la correspondiente escritura, la operación de financiamiento en principio concertada entre Financiera Nacional de Cuba y "Marítima Mariel, S. A." para la construcción y operación de dicha concesión.

Cuarto: La "Marítima Mariel, S. A." prestará al Estado, la Provincia o Municipio los servicios que le sean propios con una bonificación del treinta por ciento (30%) de descuento en sus tarifas.

Quinto: Las tarifas máximas que podrá cobrar la "Marítima Mariel, S. A." serán las que rijan en el Puerto de La Habana, en el momento de promulgarse el presente Decreto, y se la autoriza para alterar en cualquier tiempo dichas tarifas cumpliendo las disposiciones que se encuentren vigentes sobre la materia, previa la aprobación de Financiera Nacional de Cuba, mientras no se le hubiese satisfecho su acreencia.

Sexto: La "Marítima Mariel, S. A." queda autorizada para inscribir esta concesión en el Registro de la Propiedad, para emitir bonos hipotecarios con la garantía de sus propiedades, incluyendo las concesiones a que se refiere este Decreto, inscribirlos en el Registro de la Propiedad y enajenar libremente esos bienes.

Séptimo: Si el Presidente de la República considerase necesario para el servicio del Puerto señalar las obras con una luz, los concesionarios tendrán la obligación de colocarla en el sitio y con la apariencia que se designe.

Octavo: En el caso de que por el Ramo de Hacienda se considere necesario, los concesionarios quedan obligados a construir por su cuenta una casilla inmediata a las obras en el lugar que se les designe, para el alojamiento de los Inspectores de Aduana e Inmigración.

Noveno: La edificación de los muelles y la realización de todas las obras a que se refiere el apartado Primero, deberán ser sometidas, supervisadas y aprobadas por Financiera Nacional de Cuba, a los fines de su financiamiento.

Décimo: Se autoriza y otorga a "Marítima Mariel, S. A." la conversión al servicio público del muelle y almacenes cuyo uso particular fué concedido por el Decreto Presidencial número 1655 de 26 de junio de 1954, con sus modificaciones, ampliaciones y mejoras, pudiendo gravar y enajenar libremente todos dichos bienes, conforme a lo dispuesto en el apartado sexto del presente Decreto.

Undécimo: Esta concesión se considerará, además, comprendida entre las que determinan los artículos 44 y 51 de la vigente Ley de Puertos y se otorga



Agosto 15 de 1955

GACETA OFICIAL

quedando sujeto a lo prescrito en los artículos 50 y 54 de dicha Ley.

Duodécimo: La "Marítima Mariel, S. A." queda obligada a constituir una fianza como garantía del cumplimiento de estas prescripciones, equivalente al uno por ciento (1%) del presupuesto de las obras que ha de construir de inmediato, cuya garantía será dejada sin efecto cuando acredite estar las mismas ejecutadas por valor de una tercera parte de su presupuesto.

Décimo Tercero: La declaración de utilidad pública contenida en el presente Decreto se hace por ser necesarias las obras para mejorar la higiene de la zona, y también por tender al fomento de la riqueza nacional.

Décimo Cuarto: Las caducidades propuestas en el presente Decreto en lo que se refiere a la realización de las obras dentro del término fijado, solamente afectarán a la parte no ejecutada del proyecto de acuerdo con las recepciones parciales practicadas y referidas.

Décimo Quinto: Dada la naturaleza de las obras y discontinuidad que se produce en el litoral con los muros, muelles y construcciones y demás que se proyecta construir, la zona de vigilancia contemplada en los artículos 7 y 10 de la Ley de Puertos se internará situándola al fondo de la propiedad que constituirá la concesión, entendiéndose por el frente de las mismas el que dé al mar.

Décimo Sexto: La concesión otorgada y la conversión a pública concedida por el presente Decreto, se hace en uso de las facultades concedidas al Ejecutivo por la Ley-Decreto Nº 1998 de 27 de enero de 1955.

Décimo Séptimo: Quedan encargados del cumplimiento del presente Decreto el Ministro de Obras Públicas y Financiera Nacional de Cuba, en la parte que a cada cual concierne.

Décimo Octavo: Esta concesión se otorga sin perjuicio del derecho de propiedad de terceros y en la exigencia de quedar obligada la Compañía a cuanto le sea aplicable de las disposiciones contenidas en las Leyes-Decretos números 1015 de 7 de agosto de 1953 y 1998 de 27 de enero de 1954, y en este Decreto.

Décimo Noveno: Se dejan sin efecto cuantos Decretos, órdenes o disposiciones administrativas se opongan a lo dispuesto en el presente Decreto que comenzará a regir desde la fecha de su publicación en la GACETA OFICIAL de la República.

Dado en el Palacio de la Presidencia, en La Habana, a los tres días del mes de agosto de 1955.

FULGENCIO BATISTA.
Presidente.

---

Decreto

Por cuanto: Con motivo de entrar en Presupuestos Generales de la Nación que regir durante el Ejercicio Fiscal de 1955- necesario estructurar la designación de Temporero, de acuerdo con los créditos a ese fin para el Ministerio de Obras P.

Por cuanto: En el Ministerio de Obra existe personal temporero que viene p sus haberes con cargo a créditos y apr concedidas, que no han sido incluidas en puestos generales que han de entrar en próximo día 1ro. de julio de 1955.

Por tanto: En uso de las facultades que confieridas por la Constitución y las leyes a propuesta del Ministro de Obras Públic tido del Consejo de Ministros,

Resuelvo:

Primero: Declarar excedente a partir de de julio de 1955, a todo el personal temp viene percibiendo sus haberes con cargo dito Cap. I-Epígrafe No. 100-Partida No. sonal Temporero-Presupuesto Extraordina sidades Plan de Obras, por motivo de ha suprimida dicha partida totalmente de lo puesta que han de entrar en vigor a par citada fecha.

Segundo: Declarar la excedencia, a pa día 1ro. de julio de 1955, de todos los en de carácter temporero, que perciban sus con cargo a los créditos del 15% de las e riones del Ministerio de Obras Públicas.

Tercero: El Negociado de Personal del rio de Obras Públicas, remitirá copia cer de este Decreto a los interesados, a los de la debida constancia en el expediente res

Cuarto: Una vez que se concedan al Minis Obras Públicas las cantidades indispensable cesarias para el mantenimiento de los servi actualmente presta el personal en funcione toriza al Ministro de Obras Públicas, pa firmar en sus cargos al personal objeto e excedencia.

Dado en el Palacio de la Presidencia, en bana, a 30 de junio de 1955.

FULGENCIO BAT

Presidente.
Jorge García Montes,
Primer Ministro.
Nicolás B. Arroyo,
Ministro de Obras Públicas

\$ 6970—

---

Decreto No. 2

Por cuanto: El Administrador de "Acued de Marianao y Regla", Dr. Carlos N. Calvet está con fecha marzo 30 del presente año, de Presidencia, se facilitara al Acueducto de R con carácter devolutivo, 800 metros lineales d . para reemplazar tramo bajo la Vía Bl

## CERTIFICATE OF TRANSLATOR'S COMPETENCE

STATE OF FLORIDA       )
              ) SS
COUNTY OF MIAMI-DADE    )


BEFORE ME, A NOTARY PUBLIC IN AND FOR THE STATE OF FLORIDA AT LARGE, PERSONALLY APPEARS **AMBAR DIAZ**, PERSONALLY KNOWN TO ME, WHO, AFTER BEING DULY SWORN, DEPOSES AND SAYS THAT SHE HAS PERFORMED THIS TRANSLATION OF **DECREE 2367 OF 1955, CONCESSION** FROM **SPANISH** INTO **ENGLISH**, AND THAT SHE HAS DONE THIS TRANSLATION TO THE BEST OF HER ABILITY. THE SOURCE DOCUMENT CONSISTING OF **7** PAGES, AND THE TRANSLATION CONSISTING OF **8** PAGES; THIS CERTIFICATION BEING ATTACHED THERETO. THIS CERTIFICATION ATTACHED TO THE PRINTED DOCUMENT, DOES NOT INCLUDE THE CERTIFICATION OF ANY ELECTRONIC FILE.


_____
AMBAR DIAZ


SWORN TO AND SUBSCRIBED THIS 6th DAY OF _____MAY_____, A.D., 2021.


_____
NOTARY PUBLIC, STATE OF FLORIDA
AT LARGE


MY COMMISSION EXPIRES:



Nelsy Blanco
COMMISSION # GG297171
EXPIRES: February 4, 2023
Bonded Thru Aaron Notary