## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL, *et al.*,

      Plaintiffs,

      v.

SEABOARD CORPORATION,

      Defendant.

_____/

C. A. No. 1:21-cv-01052-CFC

**DEMAND FOR JURY TRIAL**

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**


CROSS & SIMON LLC
Michael L. Vild (No. 3042)
1105 N. Market Street, Suite 901
Wilmington, Delaware 19801
mvild@crosslaw.com

BERLINER CORCORAN & ROWE LLP
David A. Baron (admitted *pro hac vice*)
Melvin White(admitted *pro hac vice*)
Laina C. Lopez (admitted *pro hac vice*)
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com

FIELDS PLLC
Richard W. Fields (admitted *pro hac vice*)
Martin F. Cunniff (admitted *pro hac vice*)
Edward Han (admitted *pro hac vice*)
1701 Pennsylvania Ave, N.W., Suite 200
Washington, D.C. 20006
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com
edhan@fieldslawpllc.com
*Counsel to Plaintiffs*

Dated: November 29, 2021

## **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ...................................................................................1

II.   ARGUMENT ........................................................................................3

    A.    The Amended Complaint Adequately Alleges Trafficking in Confiscated Property .............................................................................3

        1.    Defendant Misunderstand the Nature of the Confiscated Property ...................................................................................4

        2.    Defendant Continues to Knowingly and Intentionally Traffic in the Confiscated Property ............................................................6

        3.    Defendant Participated In and Profited From the Trafficking of Others ....................................................................................8

            i.    The Trafficking of ZEDM, TCM, and AUSA.................8

            ii.    The Trafficking of Defendant's Subsidiaries ................10

        4.    The Lawful Travel Exception is an Affirmative Defense ........11

    B.    The Estates' Personal Representatives and the Inheritors are Proper Plaintiffs ...............................................................................13

        1.    The Estates Did Not Acquire the Deceased Siblings' Claims and Any Alternative Interpretation Violates Constitutional Equal Protection .......................................................................13

        2.    In the Alternative, the Inheritors are Proper Plaintiffs .............17

    C.    Plaintiffs Have Article III Standing ...................................................19

III.  CONCLUSION ....................................................................................21

i

## <u>TABLE OF AUTHORITIES</u>

<u>**Cases**</u>                                                                                              <u>**Page(s)**</u>

*Bankers Life & Cas. Co. v. Crenshaw*,
486 U.S. 71 (1988) ................................................................................................16

*D'Addario v. D'Addario*,
901 F.3d 80 (2d Cir. 2018) ..................................................................................15

*de Fernandez v. Seaboard Marine, Ltd*,
2021 WL 3173213 (S.D. Fla. July 27, 2021) ...............................................*passim*

*Est. of Tallman ex rel. Tallman v. City of Gastonia*,
682 S.E.2d 428 (N.C. App. 2009) ........................................................................15

*Evankavitch v. Green Tree Servicing, LLC*,
793 F.3d 355 (3d Cir. 2015) .................................................................................12

*Exxon Mobil Corp. v. Corporacion CIMEX S.A.*,
2021 WL 1558340 (D.D.C. Apr. 20, 2021) ..........................................................19

*Garcia-Bengochea v. Carnival Corp.*,
407 F. Supp. 3d 1281 (S.D. Fla. 2020) ...........................................................11, 12

*Garcia-Bengochea v. Carnival Corp.*,
2021 WL 1085544 (11th Cir. Feb. 23, 2021) ........................................................18

*Glen v. Am. Airlines, Inc.*,
2021 WL 3285307 (5th Cir. Aug. 2, 2021) ...........................................................19

*Glen v. TripAdvisor LLC*,
2021 WL 1200577 (D. Del. Mar. 30, 2021) ....................................................19, 21

*Gonzalez v. Amazon.com, Inc.*,
835 Fed. Appx. 1011 (11th Cir. Feb. 11, 2021)................................................ 18-19

*Havana Docks Corp. v. Carnival Corp.*,
2019 WL 8895241 (S.D. Fla. Aug. 28, 2019) .................................................11, 13

*Havana Docks Corp. v. Carnival Corp.*,
2020 WL 5517590 (S.D. Fla. Sept. 14, 2020) ........................................19

*Havana Docks Corp. v. MSC Cruises SA Co.*,
484 F. Supp. 3d 1177 (S.D. Fla. 2020) .................................................19

*Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd.*,
484 F. Supp. 3d 1215 (S.D. Fla. 2020) .................................................19

*Iglesias v. Pernod Richard*,
2020 U.S. Dist. LEXIS 164117 (S.D. Fla. Aug. 17, 2020) ...........5, 19, 20

*In re Congoleum Corp.*,
426 F.3d 675 (3d Cir. 2005).................................................................14

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).............................................................................20

*Matter of Tr. Est. of Renjes*,
42 Haw. 151 (1957) .............................................................................15

*North American Sugar Industries v. Xinjiang Goldwind Science
& Technology Co., Ltd*,
2021 WL 3741647 (S.D. Fla. Aug. 24, 2021) .......................................19

*Pujol Moreira v. SOCIÉTÉ GÉNÉRALE, S.A.*,
2021 WL 5524484 (S.D.N.Y. Nov. 24, 2021).......................................19

*Republic Bankers Life Ins. Co. v. Bunnell*,
478 S.W.2d 800 (Tex. Civ. App. 1972).................................................15

*Rowland v. California Men's Colony, Unit II Men's Advisory Council*,
506 U.S. 194 (1993).............................................................................16

*Rycoline Prod., Inc. v. C & W Unlimited*,
109 F.3d 883 (3d Cir. 1997)................................................................13

*Smith v. Cimmet*,
199 Cal. App. 4th 1381 (2011) ............................................................15

*Soto v. Booking.com B.V.*,
No. 20-civ-24044-MGC, Doc. No. 48 (S.D. Fla. Sep. 29, 2021)...................... 16-17

*Zaboth v. Beall*,
26 Va. Cir. 269, 1992 WL 884464 (Va. 1992) ........................................................15

## Rules

Fed. R. Civ. P. 12(b)(6).............................................................................................13

## Federal Statutes

15 U.S.C. § 1692b......................................................................................................12

15 U.S.C. § 1692c(b) .................................................................................................12

22 U.S.C. § 6021 ..........................................................................................................1

22 U.S.C. § 6023(13)(A).................................................................5, 6, 8, 10, 12, 20

22 U.S.C. § 6023(13)(B).............................................................................................11

22 U.S.C. § 6023(15) ..................................................................................................15

22 U.S.C. § 6081 ..........................................................................................................1

22 U.S.C. §§ 6081-6085 .............................................................................................16

22 U.S.C. § 6082(a)(4)(B) ...................................................................................*passim*

28 U.S.C. § 1603(b) .....................................................................................................4

## State Statutes

Fla. Stat. § 731.201(14)........................................................................................14, 15

Fla. Stat. § 733.612(20)..............................................................................................17

## **Other Authorities**

33 C.J.S. Executors and Administrators § 5 ..........................................................14

## I.    INTRODUCTION

When it enacted the Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, codified at 22 U.S.C. § 6021, *et seq.* (the "Helms Burton Act" or "HBA"), Congress expressly found that: "The Castro government threatens international peace and security by engaging in acts of armed subversion and terrorism such as the training and supplying of groups dedicated to international violence."  110 Stat. 785, 104 P.L. 114.  It further found that the trafficking in confiscated property, "provides badly needed financial benefit, including hard currency, oil, and productive investment and expertise, to the current Cuban Government and thus undermines the foreign policy of the United States." 22 U.S.C. § 6081.  The HBA, therefore, created a private action to recover damages for the wrongful exploitation of confiscated property and, in so doing, advances the foreign policy of the United States to bring democratic institutions to Cuba.

Plaintiffs bring this action to recover damages and interest under Title III of the HBA for Defendant's trafficking in property that the Cuban Government confiscated on or after January 1, 1959, and as to which Plaintiffs own claims. Among other things, Cuba confiscated thousands of acres of land and a 70-Year Concession from Plaintiffs that conferred exceptionally broad rights, including to develop and exploit docks, warehouses, and port facilities in Mariel Bay, Cuba ("Confiscated Property").  Cuba incorporated the land and the 70-Year Concession

1

into the Zona Especial de Desarrollo Mariel ("ZEDM") (a/k/a Mariel Special Economic Zone) where Cuba developed the Port of Mariel, which includes a container terminal facility ("Container Terminal" or "TCM").

Defendant and its wholly owned subsidiaries have trafficked—and continue to traffic—in Plaintiffs' Confiscated Property without Plaintiffs' authorization. Defendant's marine segment which is operated by Defendant's wholly-owned subsidiaries, provides cargo shipping services in the U.S. and 26 countries in the Caribbean (including Cuba) and Central and South America.  Since at least May 2019, Defendant's marine segment has trafficked in the Confiscated Property by having vessels call at the Container Terminal and engaging in commercially beneficial transactions using Plaintiffs' Confiscated Property.  Plaintiffs' Amended Complaint explains precisely how Cuba confiscated Plaintiffs' property, details dozens of specific instances of trafficking by Defendant, and identifies how Defendant participates in and profits from the trafficking by others, including its wholly-owned subsidiaries, Seaboard Marine, Seaboard Atlantic, Ltd., and Seaboard Patriot, Ltd.

Defendant's Motion to Dismiss largely ignores Plaintiffs' allegations and raises legal arguments rejected by other courts or otherwise lacking merit.  Contrary to Defendant's arguments: (1) Plaintiffs adequately allege trafficking in confiscated

property; (2) the inheritor and estate plaintiffs can bring Title III claims; and (3) Plaintiffs have Article III standing.

## II.    ARGUMENT

### A.    The Amended Complaint Adequately Alleges Trafficking in Confiscated Property

Each of Defendant's four arguments regarding the adequacy of Plaintiffs' allegations of trafficking is without merit.  First, Defendant misunderstands the nature of the Confiscated Property, confusing the Container Terminal with Plaintiffs' rights to build and exploit it.  Second, in arguing that Plaintiffs fail to allege that Defendant "knowingly and intentionally" trafficked in the Confiscated Property, Defendant ignores the inclusion of those exact allegations and dozens of specific supporting facts throughout the Amended Complaint.  Third, Defendant wrongly contends that Plaintiffs fail to allege that Defendant participated in and profited from the trafficking of third parties—which, under the express terms of the HBA is itself trafficking—despite the inclusion of those exact allegations and dozens of specific supporting facts throughout the Amended Complaint.  Finally, Defendant improperly invokes the "lawful travel" exception—which courts have repeatedly determined to be an affirmative defense—and mistakenly contends that it is an element of an HBA claim, contrary to binding Third Circuit precedent.

3

### 1.   Defendant Misunderstands the Nature of the Confiscated Property

Defendant opens its brief with an argument a court has already rejected as a misunderstanding of both the HBA and Plaintiffs' allegations – that it could not have trafficked in Plaintiffs' Confiscated Property because the Container Terminal was constructed after the confiscation and therefore was not Plaintiffs' property. Opening Brief ("OB") at 9.  Defendant's argument confuses the Container Terminal with the rights to build and exploit it.

Defendant fails to grasp that Cuba's act of building the Container Terminal, along with the ports, docks, warehouses, and facilities is, by itself, a violation of Plaintiffs' rights under the 70-Year Concession.   Plaintiffs allege that, by confiscating the 70-Year Concession, Cuba confiscated Plaintiffs' right to "construct ... new buildings and works" in the Bay of Mariel.  Am. Compl. ¶¶ 84-87, 95. Plaintiffs also allege that Cuba confiscated Plaintiffs' rights to "plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel." *Id.*

That Cuba's construction of the Container Terminal occurred "decades after" Cuba's confiscation is irrelevant.  Cuba confiscated the Blanco Rosell siblings' rights under the 70-Year Concession to develop and exploit ports in the Bay of Mariel, and then developed and is exploiting a port in the Bay of Mariel through the ZEDM, TCM and AUSA, all of which are agencies or instrumentalities of Cuba as defined in the HBA (28 U.S.C. § 1603(b)).  Am. Compl. ¶ 48.  As Plaintiffs properly

4

allege, Defendant, through its marine segment, then trafficked in Plaintiffs' Confiscated Property by engaging in commercial activities using or otherwise benefitting from the Port of Mariel and the Container Terminal without Plaintiffs' authorization. 22 U.S.C. § 6023(13)(A)(ii); Am. Compl. ¶¶ 116-30.

In rejecting an identical argument first made by Defendant's subsidiary, the court in *de Fernandez v. Seaboard Marine, Ltd.* held:

> [T]he Amended Complaint sufficiently sets forth that *in constructing the Port of Mariel and its container terminal in ZEDM, the Cuban Government exploited the same rights that were granted to the Blanco Rosell Siblings in the 70-Year Concession*. See ECF No. [45] ¶ 68 (granting, among other things, the right to "plan, develop, study, execute, maintain and exploit public docks and warehouses in the Bay of Mariel[.]"); *id*.¶¶ 85-86, 88; see also *Iglesias v. Richard*, No. 20-cv-20157, 2020 U.S. Dist. LEXIS 164117, at *26 (S.D. Fla. Aug. 17, 2020) (rejecting defendant's argument that "the commercial activity occurred with a different product and brand name nearly thirty years after the alleged illegal taking" was sufficient to defeat plaintiff's allegations of a trafficking).

2021 WL 3173213, at *6 (S.D. Fla. July 27, 2021) ("*Seaboard Marine*") (emphasis added). The court was "not convinced that Plaintiffs should somehow be precluded from asserting a Title III claim because the Cuban Government enhanced and/or changed the nature of the Confiscated Property following its illegal confiscation." *Id*. at *6 n.4. Doing so, the court reasoned, would undermine the legislative goal of protecting U.S. nationals against confiscatory takings and wrongful trafficking in confiscated property. *Id*.

Defendant's argument that its use of the Container Terminal is not trafficking in the "concession rights" because the 70-Year Concession did not grant Plaintiffs the specific right to load and unload containers at, or direct shipments to, the Container Terminal, OB at 10, also fails.   As Plaintiffs allege, the 70-Year Concession granted them far broader rights—e.g., the absolute rights to occupy and use the Bay of Mariel to build and operate ports, to evict and exclude any other person or entity from the Bay of Mariel, and even of mandatory expropriation of both public and private property.   Am. Compl. ¶¶ 84-87.   Thus, Defendant's operation of its billion-dollar marine segment shipping business utilizing the Port of Mariel plainly traffics in the Confiscated Property, including Plaintiffs' rights under the 70-Concession.   As in *Seaboard Marine*, this Court should find that Plaintiffs' pleading "sufficiently alleges that Defendant engaged in 'commercial activity using or otherwise benefit[ing] from' the Port of Mariel and the container terminal without Plaintiffs' authorization, thereby trafficking in Plaintiffs' Confiscated Property." *Seaboard Marine*, 2021 WL 3173213, at *5 (citing 22 U.S.C. § 6023(13)(A)(ii)).

## 2.    Defendant Continues Knowingly and Intentionally to Traffic in the Confiscated Property

Defendant represents to this Court that the Amended Complaint "does not contain factual allegations supporting the inferences that [Defendant] knew or had reason to know" that it has been trafficking in the Confiscated Property.   OB at 12. But in September 2020, Plaintiffs delivered a letter to Defendant (via Certified Mail,

6

FedEx, *and* process server) notifying Defendant that it was trafficking in the Confiscated Property. Am. Compl. ¶ 132. As Plaintiffs allege, Defendant conducted at least ***a dozen*** trafficking voyages ***after*** it received that notice letter. Am. Compl. ¶ 134. In fact, Plaintiffs allege that the most recent voyage was just weeks ago, months after Defendant had already been served with the initial complaint and appeared in this case.[1] *Id*. Defendant's contention that it knew nothing about the Confiscated Property during its trafficking voyages and that Plaintiffs failed to plausibly allege such knowledge, OB at 11-13, is therefore unsustainable.

Defendant quotes the concession to argue that it could not have knowingly trafficked in the Confiscated Property because Plaintiffs' concession rights were non-exclusive but omits key language that defeats its argument. Specifically, Defendant asserts that the concession "was granted 'without prejudice to the ownership right of third parties ...," OB at 13-14 (citing the 70-Year Concession) but replaces the critical phrase with ellipses: "without prejudice to the ownership right of third parties or entities ***under previous concessions still in force***." Am. Compl. ¶ 84 (emphasis added). Because Plaintiffs allege that "there were no previous concessions in force," *id*., and because the concession granted the right to exclude

---

[1] These are just the most blatant instances of knowing and intentional trafficking alleged in the Amended Complaint. There are numerous other allegations that infer Defendant's knowledge as well as express allegations that Defendant "knowingly and intentionally" trafficked. *See id*. ¶¶ 92, 98, 99-101, 123, 128, 130-31.

others from the Bay of Mariel, *see id*. ¶ 85, the 70-Year Concession was effectively exclusive.   Moreover, even if the concession were not exclusive, "there is no language in Title III that requires Plaintiffs to have an exclusive claim to the Confiscated Property." *Seaboard Marine*, 2021 WL 3173213, at *6.

### 3.   Defendant Participated In and Profited From Trafficking by Others

Defendant commits trafficking because it "participates in, or profits from[] trafficking ... by another person." 22 U.S.C. § 6023(13)(A). Plaintiffs allege that Defendant participated in and profited from the trafficking of two other groups of traffickers: (i) the ZEDM, TCM, and AUSA, all of which are Cuban agencies or instrumentalities that traffic in Plaintiffs' Confiscated Property by developing, operating, and exploiting the Port of Mariel; and (ii) Defendant's wholly-owned subsidiaries, which traffic by calling at the Container Terminal, by carrying, unloading, and loading cargo containers there, and by owning two of the vessels that called at the Container Terminal.

### i.   Trafficking by ZEDM, TCM, and AUSA

Contrary to Defendant's assertions that the Amended Complaint contains no allegations that ZEDM, TCM, and AUSA "engaged in any activity involving the Confiscated Property," OB at 14, those allegations are present, in painstaking detail. First, Plaintiffs allege how the ZEDM was created in the Bay of Mariel and how Cuba incorporated the Confiscated Property into the ZEDM.  Am. Compl. ¶ 107-09.

8

Next, Plaintiffs show how Cuba constructed the Container Terminal (the TCM) in the Bay of Mariel and how that terminal subsumes Plaintiffs' 70-Year Concession rights. *Id.* ¶ 110-11. Plaintiffs then identify their extensive land holdings that were confiscated and explain how those lands were incorporated into certain sectors of the ZEDM that are operated by AUSA and the TCM. *Id.* ¶¶ 112-13. Plaintiffs even include a ZEDM map. *Id.* ¶ 113. These alleged activities necessarily implicate trafficking in Plaintiffs' confiscated concession rights, which included the rights to plan, study, execute, maintain, and exploit public docks and warehouses in the Bay of Mariel. *Id.* ¶¶ 114-15. Instead of answering these allegations, Defendant denies their existence. OB at 14.

Similarly, Defendant falsely represents to the Court that "[t]here are no factual allegations that [Defendant] participated in or profited from any trafficking," OB at 15. In fact, Plaintiffs specifically allege that the Defendant's wholly-owned subsidiaries have directly participated in trafficking of the ZEDM, TCM, and AUSA by calling at the Container Terminal on dozens of occasions, carrying cargo containers to the Container Terminal, and loading and unloading cargo containers there. Am. Compl. ¶¶ 116-37. Plaintiffs also allege that Defendant profits from this trafficking through its container shipping business in the Port of Mariel, including the use of "ZEDM's ports, docks, warehouses, and facilities." Am. Compl. ¶ 126.[2]

---

[2] In 2020 alone, Defendant reported in its SEC filings that it reaped about $1 billion

Plaintiffs allege that, but for the trafficking of the ZEDM, TCM, and AUSA, Defendant's business in Cuba would not be "possible and profitable." *Id*. These allegations are sufficient to state a claim under the HBA. *See Seaboard Marine*, 2021 WL 3173213, at *7 ("[T]he Amended Complaint plausibly alleges that Defendant participated in, and profited from, the Cuban Government's confiscation and possession of the Confiscated Property without Plaintiffs' authorization."); 22 U.S.C. § 6023(13)(A)(iii) (trafficking includes "cause…[ing], direct…[ing], participate…[ing] in, or profit…[ing] from, trafficking … by another person, or otherwise engag…[ing] in trafficking … through another person …").

### ii.    Trafficking by Defendant's Subsidiaries

Defendant's argument that it did not participate in or profit from the trafficking of its subsidiaries at the Container Terminal "because the container terminal was not confiscated, and Plaintiffs do not own claims to the container terminal," OB at 15, merely rehashes an argument refuted above; a court has already rejected that argument as a misunderstanding of the HBA and Plaintiffs' allegations. *Seaboard Marine*, 2021 WL 3173213, at *6 and Section II.A.1, *supra*. Similarly, Defendant's assertion that Plaintiffs fail to allege that Defendant knew or should

---

in revenue from Defendant's marine segment, which includes Defendant's wholly-owned subsidiaries – Seaboard Marine, Seaboard Atlantic, Ltd., and Seaboard Patriot, Ltd. – all of which directly traffic in the Confiscated Property, and includes at least two trafficking vessels that Defendant beneficially owns. Am. Compl. ¶ 44.

have known that it was participating in or profiting from the trafficking of others, OB at 15-16, restates its prior argument and can be summarily dismissed; Plaintiffs expressly allege that Defendant, through its subsidiaries, trafficked at least a dozen times **after** receiving notice that it was participating in and profiting from the trafficking of others.  Am. Compl. ¶ 134.

### 4.   The Lawful Travel Exception is an Affirmative Defense

The HBA contains an exception to liability for "transactions and uses of property incident to lawful travel to Cuba, to the extent that such transactions and uses of property are necessary to the conduct of such travel."   22 U.S.C. § 6023(13)(B) (the "Lawful Travel Exception").  Defendant wrongly argues that the Lawful Travel Exception is an element of a trafficking claim that Plaintiff must plead and prove.  OB at 16-17.  Courts that considered the question have held that lawful travel is an affirmative defense to an HBA claim, not an element of Plaintiffs' case-in-chief.  *See Garcia-Bengochea v. Carnival Corp*., 407 F. Supp. 3d 1281, 1286-88 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp.*, 2019 WL 8895241, *3 (S.D. Fla. Aug. 28, 2019).  Lawful travel is an exception to unlawful trafficking, requiring proof of new facts (for example, that the conduct was "incident" and "necessary" to "lawful travel").  Therefore, lawful travel is an affirmative defense "that must be established by [defendant], not negated by Plaintiff."   *Garcia-Bengochea*, 407 F. Supp. 3d at 1286.

Precedent in the Third Circuit cited by Defendant supports this conclusion.  In

*Evankavitch v. Green Tree Servicing, LLC*, a consumer sued a debt collector for

violating a statutory prohibition on contacting third parties to collect a debt.  *See* 15

U.S.C. § 1692c(b).  However, that statutory prohibition begins with the phrase

"Except as provided in section 1692b ...," which permits such calls for certain

purposes.  *See* 15 U.S.C. § 1692b.  In determining whether the purpose of the call

was an affirmative defense or an element of the prima facie case, the Third Circuit

looked to "telltale language" of an affirmative defense—namely, that the statutory

prohibition began with the phrase "except as provided."  *Evankavitch*, 793 F.3d 355,

362 (3d Cir. 2015).  The Lawful Travel Exception is identical in this regard.  Section

6023(13)(A) defines trafficking and begins with the phrase "except as provided in

subparagraph (B)," which contains the Lawful Travel Exception.  22 U.S.C. §

6023(13)(A).  Thus, even under the analysis of *Evankavitch*, the authority cited by

Defendant, the Lawful Travel Exception is an affirmative defense.

The court in *Garcia-Bengochea v. Carnival Corp.* applied the same reasoning

that the Third Circuit applied in *Evankavitch* to the Lawful Travel Exception:

> By using the phrase "except as provided in subparagraph (B)"
> immediately before describing the conduct that constitutes trafficking,
> Congress expressed a clear intent to make the travel provision
> an *exception* to unlawful trafficking. Moreover, because this statutory
> exception requires proof of new facts (*i.e.*, conduct that was "incident"
> and "necessary" to "lawful travel"), it fits the mold of a traditional
> affirmative defense that raises "new allegations of excuse, justification,
> or other negating matters."

12

407 F. Supp. 3d 1281, 1286–87 (S.D. Fla. 2019) (citations omitted); *see Havana Docks Corp. v. Carnival Corp.*, 2019 WL 8895241, at *3 (S.D. Fla. Aug. 28, 2019) (citations omitted).  In sum, because the Lawful Travel Exception is an affirmative defense and "not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)."  *Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) (citations omitted).

### B.    The Estates' Personal Representatives and the Inheritors are Proper Plaintiffs'

Based on the requirement that Title III claimant must have been an American citizen and must have acquired ownership of the claim to Confiscated Property before March 12, 1996 (22 U.S.C. § 6082(a)(4)(B)), Defendant mistakenly argues that the estates and inheritors cannot bring a Title III claim.  For the reasons explained below, the Court should reject these arguments.

### 1.    The Estates Did Not Acquire the Deceased Siblings' Claims and Any Alternative Interpretation Violates Constitutional Equal Protection

Defendant incorrectly assumes that when the Blanco Rosell siblings died, a change in legal ownership of their claims automatically occurred, causing their estates to "acquire" their claims.  OB at 18-19.  An estate, however, is not a legal entity and cannot acquire anything.  An estate is simply the term used to describe the property of a person who has died.  Under Florida law, where the estates are pending,

an estate cannot acquire the deceased's property because the estate *is* the deceased's property.  Fla. Stat. § 731.201(14) ("'Estate' means the property of a decedent that is the subject of administration."); *see* 33 C.J.S. Executors and Administrators § 5 ("The 'estate' of a deceased person is ***not a legal entity*** but is merely a name indicating the sum total of the decedent's assets and liabilities") (emphasis added).

The Personal Representatives are doing exactly what Florida probate law and Miami-Dade Probate Court orders require them to do.  Specifically, the Miami-Dade Circuit Court has appointed each of them to file lawsuits "to recover money damages under the [Helms-Burton Act] … for acts of trafficking in property confiscated by the Cuban Government … ***and as to which the estate[s] of [the deceased Blanco Rosell siblings] own … claims***.  *See In re Estate of Alfredo Blanco, deceased*, Case No.  2020-005105-CP-02)(Exhibit A, hereto); *In re Estate of Byron Blanco, deceased*, Case No. 2001-002462-CP-02 (Exhibit B, hereto); *In re Estate of Enrique Blanco*, deceased, Case No. 2021-000187-CP-02 (Exhibit C, hereto); and *In re Estate of Florentino Blanco*, deceased, Case No. 2021-000131-CP-02 (Exhibit D, hereto) (emphasis added).  The Court may take judicial notice of the Miami-Dade Probate court proceedings.  *See In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant.").

Plaintiffs respectfully submit that that the *Seaboard Marine* court, in holding that the estates "acquired" the deceased siblings' claims, 2021 WL 3173213, at *9, relied on inapplicable cases that pre-date Fla. Stat. § 731.201(14) (which defines "estate" as the decedent's property).  That conclusion is contrary to the heavy weight of authority in cases around the country, all of which acknowledge that an estate is not a legal entity but simply a term used to describe a decedent's property.  *See, e.g., D'Addario v. D'Addario*, 901 F.3d 80, 102 (2d Cir. 2018) (an estate is "merely a name to indicate the sum total of the assets and liabilities of the decedent") (citations omitted); *Smith v. Cimmet*, 199 Cal. App. 4th 1381, 1390 (2011) (an estate "is simply a collection of assets and liabilities") (citations omitted).[3]

Moreover, the *Seaboard Marine* court's interpretation of Section 6082(a)(4)(B) violates constitutional equal protection.  Importantly, the cutoff date in Section 6082(a)(4)(B) applies equally whether the claimant is an individual or a corporation.  *See* 22 U.S.C. § 6023(15) (defining "United States national" to include both citizens and legal entities).  An interpretation of the HBA that strips one class of U.S. nationals—*i.e.*, natural persons—of their claims upon dying natural death, while allowing another class of U.S. nationals—*i.e.*, legal entities such as

---

[3] Multiple other courts have reached the same conclusion. *See, e.g., Est. of Tallman ex rel. Tallman v. City of Gastonia*, 682 S.E.2d 428, 434 (N.C. App. 2009); *Zaboth v. Beall*, 26 Va. Cir. 269, 1992 WL 884464, *1 (Va. 1992); *Republic Bankers Life Ins. Co. v. Bunnell*, 478 S.W.2d 800, 801 (Tex. Civ. App. 1972); *Matter of Tr. Est. of Renjes*, 42 Haw. 151, 163 (1957).

corporations—to retain their claims in perpetuity, creates two arbitrary and irrational classes of unequal claimholders. Such an outcome would eviscerate the equal protection conferred by the Due Process Clause of the Fifth Amendment. *See Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 83 (1988) ("[A]rbitrary and irrational discrimination violates the Equal Protection Clause under even our most deferential standard of review.").

Title III's purpose is reflected in its title: the "Protection of Property Rights of United States Nationals." 22 U.S.C. §§ 6081-6085. There is no rational basis for treating U.S. nationals who are natural persons differently from U.S. nationals who are legal entities; such an interpretation of Section 6082(a)(4)(B) would undermine Congress's stated purpose for the Act and would be contrary to "the common mandate of statutory construction to avoid absurd results." *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 200 (1993). The only reasonable interpretation is that Section 6082(a)(4)(B) is simply a statutory cutoff date for when an individual or legal entity had to have been or become a U.S. citizen to be able to acquire ownership of a claim. It is unrelated to whether a claim survives the death of a claimant. Indeed, at least one other court has disagreed with the *Seaboard Marine* court, holding that HBA claims do survive the death of the claimant. *See Soto v. Booking.com B.V.*, No. 20-civ-24044-MGC, Doc. No. 48 (S.D.

16

Fla. Sep. 29, 2021) (holding that a deceased claim-holder's personal representative can pursue decedent's claim).

As alleged in the Amended Complaint, the decedents acquired their claim to the Confiscated Property long before March 12, 1996. The deceased siblings' Personal Representatives are the proper Plaintiffs to represent the deceased's interests in this case. *See* Fla. Stat. § 733.612(20) (the personal representative may "[p]rosecute or defend claims or proceedings *in any jurisdiction* for the protection of … the decedent's property") (emphasis added). Under both Florida law and constitutional equal protection, Section 6082(a)(4)(B) should be interpreted to preserve the deceased siblings' claims.

### 2.    In the Alternative, the Inheritors are Proper Plaintiffs

Although Defendant cites non-binding decisions that have interpreted "acquire" to include passive inheritance, Defendant has presented no binding authority that an heir may not "acquire" a claim through inheritance after March 12, 1996. Plaintiffs urge the Court to adopt the interpretation of former Congressman Dan Burton, co-sponsor of the Helms Burton Act, and others who have explained:

> There is nothing in the actual language of section 6082(a)(4)(B) that precludes an heir to a claim that existed before March 12, 1996, from pursuing that same claim under Title III after that date. The requirement in section 6082(a)(4)(B) that the U.S. national acquire ownership of the claim before March 12, 1996 *does not apply to inheritances of a claim*. That provision was specifically enacted to disallow the acquisition of claims by purchase or trade in a secondary market for claims….

17

> Stated simply, Congress did not want to create a marketplace for the buying and selling of Title III claims. A claim inherited from a family member was never at issue.

Brief of Former Congressmen Dan Burton and Robert Torricelli and Directorio Democratico Cubano, Inc., as Amici Curiae in Support of Appellant and Reversal, filed in *Garcia-Bengochea v. Carnival Corp.*, No. 20-12960, 2021 WL 1085544 (11th Cir. Feb. 23, 2021) (emphasis added).

In *Gonzalez v. Amazon.com, Inc.*, 835 Fed. Appx. 1011, 1012 (11th Cir. Feb. 11, 2021), the Eleventh Circuit found an HBA claim inherited after March 12, 1996, to be an "ownership" claim, namely Gonzalez's mother's HBA claim, which she inherited from her husband in 2016: "after Gonzalez's father passed away in November of 2016, Gonzalez's mother inherited the property. She chose to give her ownership claim to Gonzalez, her eldest son, because of her advanced age and fragile health." *Id.* at 1011. The difficulty presented by the *Gonzalez* case is that there were two post-March 12, 1996 events: (1) the 2016 inheritance by Gonzalez's mother from Gonzalez's father when he died and (2) Gonzalez's mother's 2016 *inter vivos* transfer of "her ownership claim to Gonzalez, her eldest son, because of her advanced age and fragile health." 835 F. App'x 1011. (slip op. at 4). The *inter vivos* transfer from mother to son arguably runs afoul of the § 6082(a)(4)(B). The Eleventh Circuit upheld the dismissal of Gonzalez's claims because "Nothing within Gonzalez's amended complaint suggest he acquired a claim to his grandfather's

18

property before [March 12, 1996]." *Id*. (emphasis added).  But the Eleventh Circuit referred to Gonzalez's mother's claim as an "ownership" claim, even though she inherited her claim after March 12, 1996.

### C.    Plaintiffs Have Article III Standing

Finally, Defendant argues that plaintiffs in HBA cases do not have Article III standing – an argument that has been rejected by every court that has considered it, except for one district court that was swiftly reversed and vacated on appeal.  In total, at least nine courts have rejected the argument, including a court in this District and a court just last week.  *See Glen v. Am. Airlines, Inc*., 2021 WL 3285307 (5th Cir. Aug. 2, 2021); *Pujol Moreira v. SOCIÉTÉ GÉNÉRALE, S.A.*, 2021 WL 5524484, at \*5 (S.D.N.Y. Nov. 24, 2021); *North American Sugar Industries v. Xinjiang Goldwind Science & Technology Co., Ltd, et al*., 2021 WL 3741647, at \*5 (S.D. Fla. Aug. 24, 2021); *Exxon Mobil Corp. v. Corporacion CIMEX S.A*., 2021 WL 1558340, at \*21 (D.D.C. Apr. 20, 2021); *Glen v. TripAdvisor LLC*, 2021 WL 1200577, at \*5 (D. Del. Mar. 30, 2021); *Havana Docks Corp. v. Norwegian Cruise Line Holdings, Ltd*., 484 F. Supp. 3d 1215, 1227-31 (S.D. Fla. 2020); *Havana Docks Corp. v. MSC Cruises SA Co*., 484 F. Supp. 3d 1177, 1193 (S.D. Fla. 2020); *Havana Docks Corp. v. Carnival Corp*., 2020 WL 5517590, at \*11 (S.D. Fla. Sept. 14, 2020); *Iglesias v. Pernod Ricard*, 2020 U.S. Dist. LEXIS 164117 (S.D. Fla. Aug. 17, 2020).

Plaintiffs meet all the requirements of Article III standing: (1) injury in fact that is concrete, particularized, and not conjectural; (2) causation or traceability; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Defendant argues that Plaintiffs were not injured because they never owned a claim to the Container Terminal where the Defendant traffics, OB at 20, again rehashing its argument that, as shown above, rests on a misunderstanding of the Confiscated Property and Plaintiffs' allegations.  Section II.A.1, *supra*; *Seaboard Marine*, 2021 WL 3173213, at *6.  Plaintiffs owned the right to build and exploit the Container Terminal and have been injured by Defendant's trafficking at the Container Terminal without compensation and without Plaintiffs' authorization.  *See Iglesias v. Pernod Ricard*, 2020 U.S. Dist. LEXIS 164117, at *26 (S.D. Fla. Aug. 17, 2020) (rejecting defendant's argument that it did not traffic because "the commercial activity occurred with a different product and brand name nearly thirty years after the alleged illegal taking").[4]

---

[4] Defendant also seems to claim that Plaintiffs did not have the right under the 70-Year Concession to demand authorization for shipments to the Container Terminal. OB at 20.  Defendant misunderstands the consequences of its failure to obtain authorization.  The HBA creates a right to authorize trafficking in the Confiscated Property that is independent of Plaintiffs' rights under the 70-year Concession.  22 U.S.C. § 6023(13)(A).

Defendant's other argument – that any injury is traceable to actions by the Cuban Government, rather than Defendant – has also been rejected by multiple courts. Indeed, a court in this District recently held:

> In enacting Title III of the Helms-Burton Act, Congress did not intend for the causal link to stop at the Cuban government's confiscation. Instead, it observed that the rightful owners' injury stemmed from both the Cuban government's confiscation of the property **and subsequent traffickers' use of that confiscated property**.

*Glen v. Trip Advisor LLC*, 2021 WL 1200577, at *7 (D. Del. Mar. 30, 2021) (emphasis added).  Stated simply, Plaintiffs' injury in this case is traceable directly to the Defendant, which is trafficking in Plaintiffs' property without compensation.

## III.    CONCLUSION

The Court should deny Defendant's motion.

Dated:  November 29, 2021                 CROSS & SIMON LLC

                                          */s/ Michael L. Vild*
                                          Michael L. Vild (#3042)
                                          1105 N. Market Street, Suite 901
                                          Wilmington, Delaware 19801
                                          Tel:  (302) 777-4200
                                          Facsimile: (302) 777-4224
                                          mvild@crosslaw.com


                                          BERLINER CORCORAN & ROWE LLP
                                          David A. Baron
                                          (admitted *pro hac vice*)
                                          Melvin White
                                          (admitted *pro hac vice*)
                                          Laina C. Lopez

21

(admitted *pro hac vice*)
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036-4798
Tel:  (202) 293-5555
Facsimile:  (202) 293-9035
dbaron@bcr-dc.com
mwhite@bcr-dc.com
llopez@bcr-dc.com


FIELDS PLLC
Richard W. Fields
(admitted *pro hac vice*)
Martin F. Cunniff
(admitted *pro hac vice*)
Edward Han (admitted *pro hac vice*)
1701 Pennsylvania Ave, N.W., Suite 200
Washington, D.C. 20006
Tel:  (833) 382-9816
fields@fieldslawpllc.com
MartinCunniff@fieldslawpllc.com
edhan@fieldslawpllc.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that the foregoing Answering Brief complies with the Court's standing order dated November 6, 2019 regarding briefing in all cases. The Answering Brief has been prepared using 14-point Times New Roman font and contains 4,890 words, excluding the case caption, tables of contents and authorities, signature blocks, and certificates.

*/s/ Michael L. Vild*
Michael L. Vild (No. 3042)