IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ODETTE BLANCO DE FERNANDEZ
*née* BLANCO ROSELL, et al.,

    Plaintiffs,

v.                                  C.A. No. 21-cv-01052-CFC

SEABOARD CORPORATION,

    Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Dated: December 17, 2021

Robert M. Brochin (*pro hac vice*)
Matthew Papkin (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, Florida 33131-3075
(305) 415-3000
bobby.brochin@morganlewis.com
matthew.papkin@morganlewis.com

Carl A. Valenstein (*pro hac vice*)
One Federal Street
Boston, MA 02110
(617) 341-7700
carl.valenstein@morganlewis.com

Brian Herman (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 309-6000

MORGAN, LEWIS & BOCKIUS LLP
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
jody.barillare@morganlewis.com

*Counsel for Defendant Seaboard Corporation*

## **TABLE OF CONTENTS**

**Page**

I. ARGUMENT ..................................................................................................1

    A.    Plaintiffs Do Not Plausibly Allege That Defendant Trafficked In Confiscated Property ..........................................................................1

    B.    Plaintiffs Fail To Plausibly Allege That Defendant "Knowingly And Intentionally" Trafficked ..............................................................4

    C.    Conclusory Allegations Of "Trafficking" By Non-Parties Do Not Support A Claim Against Seaboard Corporation ..........................5

    D.    Title III's "Lawful Travel" Clause Defeats Plaintiffs' Claims ............7

    E.    The Inheritors And Estates Cannot Bring Title III Claims ..................7

    F.    Plaintiffs Lack Article III Standing .....................................................11

II. CONCLUSION ............................................................................................11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................3

*Brody v. Hankin*,
   145 F. App'x 768 (3d Cir. 2005) .........................................................................9

*de Fernandez v. Seaboard Marine*,
   2021 WL 3173213 (S.D. Fla. July 27, 2021) ..................................................2, 9

*Evankavitch v. Green Tree Servicing, LLC*,
   793 F.3d 355, 363 (3d Cir. 2015) ........................................................................7

*Glen v. Am. Airlines, Inc.*,
   2020 WL 4464665 (N.D. Tex. Aug. 3, 2020) .....................................................9

*Glen v. Am. Airlines, Inc.*,
   7 F.4th 331 (5th Cir. 2021) .................................................................................8

*Glen v. Club Mediterranee, S.A.*,
   450 F.3d 1251 (11th Cir. 2006) ..........................................................................8

*Glen v. Trip Advisor LLC*,
   529 F. Supp. 3d 316 (D. Del. 2021) ..................................................................10

*Gonzalez v. Amazon.com*,
   835 F. App'x 1011 (11th Cir. 2021) ...................................................................8

*Gonzalez v. Amazon.com, Inc.*,
   2020 WL 1169125 (S.D. Fla. Mar. 11, 2020) .................................................4, 8

*Lockheed Martin Corp. v. Network Sols., Inc.*,
   985 F. Supp. 949 (C.D. Cal. 1997), *aff'd*, 194 F.3d 980 (9th Cir.
   1999) ...................................................................................................................4

*Mims v. Arrow Fin. Svcs., LLC*,
   565 U.S. 368 (2012) ............................................................................................8

*Riccio v. Sentry Credit, Inc.*,
    954 F.3d 582 (3d Cir. 2020) ..............................................................................10

*TransUnion LLC v. Ramirez*,
    141 S. Ct. 2190 (2021)......................................................................................11

*vMedex, Inc. v. TDS Operating, Inc.*,
    2020 WL 4925512 (D. Del. Aug. 21, 2020)........................................................4

**Statutes**

22 U.S.C. § 6082(a)(4)(B) ......................................................................................7, 9

Plaintiffs' Opposition (D.I. 20) confirms that Seaboard Corporation has no nexus to the real property or development concession Plaintiffs purportedly own claims to in Cuba, and that there are no allegations to satisfy the scienter or other requirements of a Title III claim.  Rather, Plaintiffs seek to hold Seaboard Corporation liable for the trafficking alleged against its subsidiary, Seaboard Marine, in a parallel action in Florida, apparently hoping for double-recovery or two-bites at the apple.  Plaintiffs have not stated a claim.

I.  **ARGUMENT**

   A.  **Plaintiffs Do Not Plausibly Allege That Defendant Trafficked In Confiscated Property**

To state a claim, Plaintiffs must identify specific property (i) that was confiscated by the Cuban Government, (ii) to which Plaintiffs own the claim, and (iii) in which Defendant trafficked.  Plaintiff must allege facts that Defendant engaged in commercial activity using or otherwise benefiting from that confiscated property.  Mot. 8-9; Opp'n 4-6.

Plaintiffs are intentionally vague as to what property they contend Defendant trafficked in.  They allege trafficking in "Confiscated Property," which they define as a collection of businesses, their assets, and unidentified land under the term "Confiscated Property."  Am. Compl. ¶¶ 92, 116, 142, 158; Opp'n 1-8.  But the Opposition confirms Plaintiffs have not alleged facts showing Defendant trafficked

in any asset within the "Confiscated Property," much less the entirety of the Confiscated Property, as defined.

Plaintiffs argue that Defendant violated Title III when it allegedly directed vessels "operated by Seaboard Marine" (Am. Compl. ¶ 119) to a Cuban container terminal. But the terminal is not "Confiscated Property." Plaintiffs do not claim they built or owned the container terminal, which was constructed decades after the Cuban Revolution. And while Plaintiffs claim that Maritima Mariel, a corporation allegedly owned by the Rosell siblings, owned land near where the container terminal now sits, critically, that land is not where the container terminal was built. Therefore, alleged trafficking in the container terminal does not support a Title III claim. Mot. 8-10; Opp'n 20.

The Opposition quotes from *Seaboard Marine*, a Florida case against Defendant's subsidiary, where "[t]he court was 'not convinced that Plaintiffs should somehow be precluded from asserting a Title III claim because the Cuban Government enhanced and/or changed the nature of the Confiscated Property following its illegal confiscation." Opp'n 5 (quoting *de Fernandez v. Seaboard Marine*, 2021 WL 3173213, at *6 n.4 (S.D. Fla. July 27, 2021)). But this case is not about whether Defendant trafficked in property owned by Plaintiffs and later "enhanced" by the Cuban Government. The Opposition makes clear that Plaintiffs do not own a claim to any land or other property Seaboard Marine allegedly used.

Plaintiffs argue, *ipsi dixit*, that Seaboard Corporation "plainly traffics in" a concession allegedly once held by Maritima Mariel, that gave non-exclusive rights to develop and exploit docks, warehouse and port facilities in Mariel Bay.[1]  Opp'n 6.  This argument is supported only by bald allegations that Defendant "directed" vessels "operated by Seaboard Marine" to the container terminal.  Am. Compl. ¶¶ 42, 116-123.  Neither the Amended Complaint nor the Opposition contain any factual details concerning the alleged direction, as is required.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To establish trafficking in the concession, Plaintiffs must show that Defendant was "using or otherwise benefiting" from the concession itself, not from the container terminal.  Plaintiffs do not explain how allegedly "directing" shipments to a terminal they did not build on land they did not own constitutes "using or otherwise benefiting from" the concession, or even how it is conceptually possible to traffic in a concession under Title III.  Mot. 9-10; Opp'n 4-6.

---

[1] The Opposition's description of the concession is broader than the allegations in the Amended Complaint.  *Compare* Opp'n 20, *with* Am. Compl. ¶¶ 84-87.  The Concession Decree shows that the purported "broader rights" Plaintiff refers to are exaggerated.  Mot. Ex. A at 4 (rights granted insofar as they are "indispensably necessary for the execution exploitations of the jobs and works of reference.")

### B. Plaintiffs Fail To Plausibly Allege That Defendant "Knowingly And Intentionally" Trafficked

Plaintiffs rely on a pre-suit letter from Plaintiffs' counsel to establish scienter. Opp'n 6-7.[2] Plaintiffs fail to allege what the letter said and, in any event, a lawyer's pre-suit letter contains unsubstantiated allegations, not *facts* sufficient to support an inference of scienter. *See Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 963 (C.D. Cal. 1997) ("The mere assertion by a trademark owner that a domain name infringes its mark is not sufficient to impute knowledge of infringement to [the defendant]."), *aff'd*, 194 F.3d 980 (9th Cir. 1999).

In the Opposition, Plaintiffs ignore, and therefore concede, that even if Seaboard Corporation became aware of the Confiscation Order from the letter, there would be no reason for Defendant to know that use of the container terminal implicated the concession. Mot. 12-13; Opp'n 6-8; *vMedex, Inc. v. TDS Operating, Inc.*, 2020 WL 4925512, at *7 (D. Del. Aug. 21, 2020) (arguments not addressed in opposition are conceded).

Plaintiffs concede that the alleged concession rights were *contingent* on satisfying certain preconditions. Mot. 12-13; Opp'n 6-8. As explained in the

---

[2] None of the other allegations referenced in Opp'n n.1 show that Seaboard Corporation knew and intended to traffic in property confiscated by the Cuban Government. Conclusory allegation that Defendant "knowingly and intentionally" trafficked must be disregarded. *Gonzalez v. Amazon.com, Inc.*, 2020 WL 1169125, at *2 (S.D. Fla. Mar. 11, 2020) (rejecting conclusory allegations of scienter).

Motion, and not disputed in the Opposition, Seaboard Corporation had no way to know whether those preconditions were satisfied—indeed, Plaintiffs do not even allege that they were satisfied. *Id.*

### C. Conclusory Allegations Of "Trafficking" By Non-Parties Do Not Support A Claim Against Seaboard Corporation

Unable to establish that Defendant itself trafficked, Plaintiffs assert liability tied to alleged trafficking by Cuban agencies and Defendant's subsidiary, Seaboard Marine. These claims fail.

Plaintiffs allege that real property they owned was incorporated into the ZEDM, a Cuban economic zone, and that the terminal also sits within the ZEDM. Opp'n 8-9. But the fact that the real property and the terminal are both somewhere within the ZEDM does not mean that they are one and the same.

Plaintiffs claim that Cuban agencies trafficked in Plaintiffs' concession with the conclusory allegation that the terminal "subsumes" the alleged concession rights. Am. Compl. ¶ 111. But there are no non-conclusory factual allegations showing trafficking by Cuban agencies in the concession. Plaintiffs do not even allege which Cuban agencies, if any, constructed the terminal.

And even if Plaintiffs established trafficking by a Cuban agency (they do not), Plaintiffs fail to identify factual allegations that Seaboard Corporation knowingly or intentionally participated in the Cuban agencies' alleged trafficking in any of Plaintiffs' "Confiscated Property" or that Seaboard Corporation intended to benefit

from that activity.  Mot. 15; Opp'n 8-10.  In fact, there are no allegations of any connection between the Defendant and the Cuban agencies.  If Plaintiffs' claims stand based on these tenuous allegations, then anyone who benefits from the existence of the Port of Mariel (*e.g.*, a bank that loans money to a farmer who sells a product that is shipped to the Port) would be deemed to "traffic" through Cuban agencies.

Plaintiffs also argue that Seaboard Corporation should be liable because of trafficking "through its subsidiaries."  Opp'n 11.  But Title III does not create automatic liability for a parent simply because it may be the end-beneficiary of profits earned by a subsidiary.  Plaintiffs are waging parallel actions – in Delaware against the parent and in Florida against the subsidiary – seeking double-recovery without any factual allegations of (mis)conduct by the parent.[3]

Citing Paragraph 126 of the Amended Complaint, Plaintiffs claim that they have "allege[d] that Defendant profits" from trafficking "through its container shipping business in the Port of Mariel, including the use of 'ZEDM's ports, docks, warehouses, and facilities.'"  Opp'n 9.  But Paragraph 126 focuses on alleged trafficking by "Defendant's wholly-owned subsidiaries" and there are no factual

---

[3] The Amended Complaint purports to allege trafficking *by vessels* (Am. Compl. ¶ 136).  Under Title III only a person can "traffic."  Mot. 15, n.8.  Vessel does not fit within the definition of "person."

allegations that Seaboard Corporation itself has container shipping business in the Port of Mariel or any nexus to ZEDM's ports, docks, warehouses or facilities.

### D. Title III's "Lawful Travel" Clause Defeats Plaintiffs' Claims

Plaintiffs concede that Title III excludes from liability "transactions and uses of property incident to lawful travel to Cuba," but argue that lawful travel is an affirmative defense. Plaintiffs rely on the fact that the statute defines "traffics" and then "excepts" out certain conduct from the definition including "lawful travel." While the use of "excepts" language may sometimes be indicative of an affirmative defense, here it should not be. In *Evankavitch v. Green Tree Servicing, LLC*, an exception *in a liability provision* was deemed to be an affirmative defense. 793 F.3d 355, 363 (3d Cir. 2015). Here, the "lawful travel" clause is in a definitions section, separate from the liability provision. The burden should be on Plaintiffs to allege and prove "trafficking" as defined.

### E. The Inheritors And Estates Cannot Bring Title III Claims

Title III claims cannot be brought "unless such national acquires ownership of the claim before March 12, 1996." 22 U.S.C. § 6082(a)(4)(B). The inheritors acknowledge that they inherited their interests after that cutoff (Opp'n 17) but ask the Court to create an exception for inheritances.

Every court to consider this issue, including Judge Stark in this District, has held that Title III bars suit by those who inherited their claim after March 12, 1996.

*See* Mot. 17 (collecting cases); *Glen v. Am. Airlines, Inc.*, 7 F.4th 331, 336-37 (5th Cir. 2021) ("Every court to address the issue has read the statute the same way as we do."). Plaintiffs' reliance on *Gonzalez v. Amazon.com, Inc.*, is misplaced. In *Gonzalez*, the plaintiff's property interest was originally owned by his father and then passed to his mother and then to him upon their deaths. *Gonzalez v. Amazon.com*, 835 F. App'x 1011, 1012 (11th Cir. 2021). Plaintiffs argue that, because the court acknowledged the mother acquired an "ownership" interest when the father died, the Eleventh Circuit implicitly held that she *acquired a Title III claim*. Plaintiffs improperly conflate owning a claim to property with having a legal claim under Title III. *See Glen v. Club Mediterranee, S.A.*, 450 F.3d 1251, 1255 (11th Cir. 2006) ("The Helms–Burton Act refers to the property interest that former owners of confiscated property now have as ownership of a 'claim to such property.'"). The *Gonzalez* court never held the mother possessed a Title III claim. Rather, to have a Title III claim, the inheritor must acquire the claim to confiscated property before March 12, 1996, just as the Eleventh Circuit held Mr. Gonzalez was required to.[4]

---

[4] The Opposition quotes personal views of former congressmen. Opp'n 17-18. The Supreme Court has admonished against relying on individual legislators' construction of a statute, even sponsors of the law. *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 385 (2012) ("the views of a single legislator, even a bill's sponsor, are not controlling").

Plaintiffs' contention that the inheritors and estates did not "acquire" their claims to confiscated property undercuts their own position. This argument has been expressly rejected, because if, as Plaintiffs contend, the inheritors and estates did not "acquire" claims to confiscated property, then they could not have "acquired" claims to confiscated property before March 12, 1996 as Title III requires. 22 U.S.C. § 6082(a)(4)(B); *Glen v. Am. Airlines, Inc.*, 2020 WL 4464665, at *4 (N.D. Tex. Aug. 3, 2020) ("If the Act's definition of 'acquires' does not include inheritance, plaintiff never 'acquire[d] ownership of the claim'"). The *Seaboard Marine* court rejected Plaintiffs' same arguments. *de Fernandez v. Seaboard Marine, Ltd.*, 2021 WL 3173213, at *8 (S.D. Fla. July 27, 2021), *reconsideration denied*, 2021 WL 4902506 (S.D. Fla. Oct. 21, 2021).

Plaintiffs also argue that because a Florida family law court appointed personal representatives of the estates, that somehow eliminates the statutory acquisition cutoff. The Florida family court did not (and could not) adjudicate the estates' statutory standing to bring federal Helms-Burton claims. Even if it had, Plaintiffs are wrong that judicial notice of such a finding is permissible. *See Brody v. Hankin*, 145 F. App'x 768, 772 (3d Cir. 2005) ("[O]n a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the matter asserted, but for the existence of the opinion.").

Plaintiffs argue that the plain meaning of the statute leads to "absurd results" because it treats natural persons differently from legal entities. Opp'n 16. This argument falls short of the Third Circuit's exacting standard that "[a]n absurd interpretation is one that defies rationality or renders the statute nonsensical and superfluous." *Riccio v. Sentry Credit, Inc.*, 954 F.3d 582, 588 (3d Cir. 2020) (internal quotations omitted). The Court need only find that "Congress could have any conceivable justification for a result—even if the result carries negative consequences . . . ." *Id.* In rejecting the same argument, Judge Stark identified several policy justifications. *Glen v. Trip Advisor LLC*, 529 F. Supp. 3d 316, 330 (D. Del. 2021).[5]

Citing Due Process, Plaintiffs assert that there is no rational basis that a Title III claim held by a corporation is not extinguished but an individual's Title III claim does not survive death. Opp'n 15. However, Judge Stark identified rational bases for the law. *Glen*, 529 F. Supp. 3d at 330 (citing judicial economy, capping number of claims, lack of harm to descendants, preventing a market for claims).

---

[5] The Opposition cites an out-of-district case holding Title III claims survive death. Opp'n 16. Survivability is irrelevant because the deceased Rosell siblings did not hold Title III claims against Seaboard Corporation when they died, years before the alleged trafficking. Am. Compl. ¶¶ 19-22.

### F. Plaintiffs Lack Article III Standing

Plaintiffs do not dispute that they bear the burden of establishing Article III standing, which requires a concrete injury even in the context of a statutory violation. Mot. 21; Opp'n 19-21. As the Supreme Court explained, "Congress's creation of a statutory prohibition . . . and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). Plaintiffs argue that they "have been injured by Defendant's trafficking at the Container Terminal . . . ." Opp'n 20. This is circular. Plaintiffs do not allege that they had exclusive rights to ship, or control who ships, goods to the terminal.

In determining whether alleged harm is concrete, courts assess "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion*, 141 S. Ct. at 2204. The Opposition identifies no common-law analogue for its asserted injury.

## II. CONCLUSION

The Court should dismiss Plaintiffs' Amended Complaint with prejudice.

| | |
|---|---|
| Dated: December 17, 2021 | MORGAN, LEWIS & BOCKIUS LLP |

Robert M. Brochin (*pro hac vice*)
Matthew Papkin (*pro hac vice*)
600 Brickell Avenue, Suite 1600
Miami, Florida 33131
(305) 415-3000

Carl A. Valenstein (*pro hac vice*)
One Federal Street
Boston, MA 02110
(617) 341-7700

Brian Herman (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 309-6000

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)
1201 N. Market Street, Suite 2201
Wilmington, DE 19801
(302) 574-3000
jody.barillare@morganlewis.com

*Counsel for Defendant Seaboard Corporation*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing Opening Brief complies with the Court's standing order dated November 6, 2019 regarding briefing in all cases. The Opening Brief has been prepared using 14-point Times New Roman font and contains 2,494 words, excluding the case caption, tables of contents and authorities, signature blocks, and certificates.

*/s/ Jody C. Barillare*
Jody C. Barillare (#5107)